MARGARET C. HAYDON and W. J. HAYDON, Appellants, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY.

Division One, July 1, 1909.

1. **APPELLATE JURISDICTION: Cancellation of Deed.** A suit in equity having for its object the cancellation of a deed to real estate, involves title to real estate, and hence the Supreme Court has jurisdiction of the appeal.

2. **TENDER: Equity: Suit to Cancel Contract.** In a suit for the cancellation of a contract and deed for land, made by plaintiffs to defendant, in settlement of damages then claimed by them from the establishing of a railroad switch in front of their property, their petition does not fail to state a cause of action because they have failed to pay back, or it fails to tender back, the money paid by defendant as the consideration for said contract and deed, if the bill contains a general offer to do equity, as the price of a decree; for then the chancellor has full power to restore the status.

3. ——: ——: ——: **Unliquidated Damages.** And making no tender back of the money actually paid by defendant for the contract it is sought to rescind, the bill does not fail to state a cause of action for rescission simply because it goes further and seeks to set off against plaintiffs' unliquidated damages claimed therein the money actually paid by defendant.

4. ——: ——: ——: **Commingling Equitable and Legal Actions.** If the bill states a cause of action for the cancellation of a contract, it will not, in the absence of a special demurrer, be held bad as a bill in equity, upon an objection to the introduction of any evidence, because it also asks for unliquidated damages.

5. **RESCISSION OF DEED: Condition Subsequent.** Conditions subsequent are not favored in equity, because they have the effect in case of breach to defeat vested estates.

Haydon v. Railroad.

6. ——: ——: Not Expressed. While not controlling, it is not entirely without significance that the deed sought to be rescinded contains no express provision making the subsequent doing of the thing depended upon by the bill as working a forfeiture a condition subsequent or a mutual dependent covenant.

7. ——: ——: ——: General Rule: Reverter, Etc.: Good Sense of The Thing. As a general rule rescission is an equitable remedy restricted to fraud, accident, mistake, surprise or duress; and where the deed contains no express provision making the doing of the thing complained of a condition subsequent, and contains no mutual dependent covenant, and contains no clause of reverter, the court is left to an interpretation of the contract by the good sense of the thing in the light of the subject-matter and the language used.

8. ——: ——: Failure of Consideration: Exception. Rescission is an equitable remedy applied in exceptional cases where there is a failure of the entire consideration of the contract, or where there is such a radical non-performance of a mutual dependent covenant, going to the very root and life of the contract, as amounts to an abandonment of the contract and releases the other party from any duty to further recognize its obligation. But there is a sensible limitation upon this rule, which is, that a bill for rescission cannot ordinarily be maintained where the ground of relief is merely a breach of contract for which complainant can obtain adequate compensation in an action at law. And measured by this rule it is *held* that plaintiffs' deed to defendant cannot be rescinded for that defendant has permitted cars to stand on the tract of land near their residence, deeded to defendant. The contract means that further damages for the improper use of the switch were not settled, and that defendant agreed not to make such specified improper use of it; and there being no obstacle in the road of recovery of full damages by a suit at law for such improper use and for the non-performance by defendant of the agreement as to the use of the switch, and that failure not going to the whole consideration, the deed will not be rescinded.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*W. A. Gardner, Guy D. Kirby* and *L. M. Haydon* for appellants.

(1) A proceeding for a rescission of a contract is a different thing from one which is based upon a rescission. In a proceeding as for a rescission, a party

may offer in his complaint to restore, unless he shows he is entitled to retain what he has received. And when a party seeking the aid of a court of equity to rescind a contract offers to conform to such orders of the court as may be deemed just and equitable, his bill is not demurrable for a want of an offer to restore the consideration. Paquin v. Milliken, 163 Mo. 104; Lincoln Trust Co. v. Nathan, 175 Mo. 32; Gould v. Bank, 86 N. Y. 80; Shuee v. Shuee, 100 Ind. 447; Allerton v. Allerton, 50 N. Y. 670. (2) The right to rescind a contract arises when the acts and conduct of one of the parties thereto evince an intention not to be further bound by its terms, or if his acts amount to a recission, had he power to rescind. Freeth v. Burr, L. R. 9 C. P. 208; Mercy Steel & Iron Co. v. Naylor, 9 Mo. App. 442; Railroad v. Richards, 30 L. R. A. 33; Lincoln Trust Co. v. Nathan, 175 Mo. 33. (3) To determine whether the failure to execute an engagement will authorize the rescission of a contract, it is only necessary to consider whether it be such that the contract would not have been made without it. Lucy v. Bundy, 9 N. H. 298; Moreau v. Charoni, 8 Rob. (La.) 157. Parol evidence is admissible to show the contract would not have been made unless both parts had been agreed upon. Graves v. Scott, 8 Pa. St. 83.

*L. F. Parker* and *Woodruff & Mann* for respondent.

(1) The petition does not state facts sufficient to constitute a cause of action in equity, and there is no equity in the bill or petition. (a) Because failure of consideration and breach of a contract, after its execution, are clearly no grounds for rescission. Paquin v. Milliken, 163 Mo. 102. (b) Because the petition shows upon its face that the entire controversy was heretofore settled, and $600 was paid as a consideration for the settlement, and defendant also, under the terms of said settlement, paid the court costs of two

suits then pending, and the petition further shows that no part of said $600 has been tendered back to defendant, neither has the amount paid as costs by defendant been repaid to it; and hence, for these reasons, plaintiffs are not entitled to recover in an action to rescind said contract. Robinson v. Siple, 129 Mo. 208; Smith v. Kander, 85 Mo. App. 33; Culbertson v. Young, 86 Mo. App. 277; Winter v. Railroad, 73 Mo. App. 202; Alexander v. Railroad, 54 Mo. App. 66; Girard v. Car Wheel Co., 123 Mo. 383; Och v. Railroad, 130 Mo. 27; Retzer v. Dold Packing Co., 58 Mo. App. 264. (c) The rule that one is not bound to restore to the other party to a contract that which he has received under it when the other party is indebted to him in a larger amount; that in such case the sum compromised upon is at least due, and need not be returned, can have no application in a case where all liability is denied, as in this case. Winter v. Railroad, 73 Mo. App. 202; Alexander v. Railroad, 54 Mo. App. 66; Girard v. Car Wheel Co., 123 Mo. 383; Gould v. Bank, 86 N. Y. 75. (2) (a) . Because if the contract set out in the petition or bill is one that can be sued upon by plaintiffs for the breach thereof, plaintiffs have a plain, adequate and complete remedy at law for the breach thereof. Benton Co. v. Morgan, 163 Mo. 661; Planet Poop. & Finan. Co. v. Railroad, 115 Mo. 619; Verdin v. St. Louis, 131 Mo. 105; Merriam v. Railroad, 136 Mo. 164; Bank v. Packing Co., 136 Mo. 93; Lackland v. Railroad, 31 Mo. 180; Swenson v. Lexington, 69 Mo. 157; Cross v. Railroad, 77 Mo. 318; Rude v. St. Louis, 93 Mo. 408; Sheehy v. Railroad, 94 Mo. 574; Mfg. Co. v. Railroad, 113 Mo. 308; Spencer v. Railroad, 120 Mo. 154; DeGeofroy v. Bridge Co., 179 Mo. 698; Tate v. Railroad, 64 Mo. 149; Meyers v. St. Louis, 8 Mo. App. 266; Martin v. Railroad, 47 Mo. App. 452; Stephenson v. Railroad, 68 Mo. App. 64; Farrar v. Railroad, 101 Mo. App. 140.

(b)  Plaintiffs' petition or bill must affirmatively show upon its face by the statement of facts that the plaintiffs have no plain, adequate and complete remedy at law.

LAMM, P. J.—In 1902 plaintiffs sued in the Greene Circuit Court in equity for the cancellation of a certain contract, and a deed made pursuant. Such contract and deed evidenced a compromise arrangement between plaintiffs and defendant whereby damages in tort, past, present and prospective, were released. Accordingly, in addition to rescission, plaintiffs sought to recover not only the damages compromised but damages for a continuance of the wrong (the maintenance of a switch track and switching and standing cars thereon) down to the date of suit—laid at $3,000 actual, and $1,000 punitive.

When plaintiffs offered their first witness defendant objected to any evidence, putting its objection on the ground the petition did not state facts sufficient to constitute a cause of action in equity and making five specifications under such general head, the divisions being immaterial. That objection was sustained—plaintiffs excepting.

Suffering a nonsuit, and failing to get it set aside, plaintiffs appealed to the St. Louis Court of Appeals. There Judge GOODE did not sit. The two sitting judges disagreed—BLAND, P. J., holding the ruling right; NORTONI, J., contra. Eventually such steps were taken that the Hon. B. Schnurmacher sat as special judge and wrote the opinion on a motion for rehearing, concurring with BLAND, P. J. [Haydon v. Railroad, 117 Mo. App. 76.] Thereupon, on the dissent of NORTONI, J., the cause was transferred to this court on the theory that the majority opinion was in conflict with Lincoln Trust Co. v. Nathan, 175 Mo. 32.

I. It seems our jurisdiction need not stand alone on the reason given by the St. Louis Court of Appeals. This because the bill had for one of its objects the cancellation of a deed to real estate. This being so, title to real estate is involved, hence, the cause belongs here on appeal. [Balz v. Nelson, 171 Mo. 682; Thomas v. Scott, 214 Mo. 430.]

II. The only question being whether the bill states a cause of action, a resume of its averments should precede the determination of the point. Attending to the bill, it alleges a contract between plaintiffs and defendant dated September 1, 1898—setting it forth in full. That contract narrates the pendency of two certain suits. In one the present plaintiffs sued the city of Springfield and John F. Myers and Sons. In the other they sued the present defendant and said Myers and Sons. In the first, plaintiffs obtained judgment for $100 damages and costs and defendants took steps to appeal to the St. Louis Court of Appeals. The second was pending in the Webster Circuit Court on change of venue. The contract further narrates that all said litigation had arisen because of the location by defendant railway company and Myers and Sons of a railway switch in front of plaintiffs' property in Springfield, Missouri (describing it), and the subject-matter was the damages accruing and injunctive relief. The contract continues as follows:

"Now as a fair and complete settlement of all questions connected therewith, and full payment for all damages, *past, present and prospective* for the location and operation of said switch in front of plaintiffs' property, defendants, the railroad company and John F. Meyer & Sons, agree to pay the plaintiffs the sum of six hundred dollars as satisfaction in full for all damages aforesaid, and also to pay all costs and expenses attending said litigations and save said plain-

tiffs harmless on account thereof, and free from all costs necessary to be incurred for the final dismissal and settlement of said suits, and on account of said $600 paid to plaintiffs, receipt of which is hereby acknowledged and payment of costs as aforesaid, said plaintiffs grant and convey to defendants full power and authority to use said switch freely in front of their said property for railroad and milling purposes, but with the distinct understanding, that neither the milling company or railroad company shall be permitted to use said switch in front of plaintiffs' property to stand cars thereon, but that the switch in front of their said property shall be kept open and free from cars except when in actual use as aforesaid.''

After setting forth the compromise contract, plaintiffs' bill avers full performance of all its terms on their part and that defendant railway company paid plaintiffs the compromise sum of $600 and the costs incurred in the two suits mentioned in the contract; then charges as follows:

"Your petitioners further allege that by the agreement above mentioned, the plaintiffs granted to the defendant railroad company the power and authority to use said switch in front of said property upon the express condition (without which, said agreement would not have been made) that it would not use said switch to stand or store cars thereon, and that said switch was to be kept free and open from cars. But the plaintiffs allege that the defendant railroad company, wholly disregarding its obligations in this behalf, continued to stand and store its cars on said track in front of plaintiffs' said property.

"Your petitioners further allege that in pursuance of said agreement and as a part thereof, they did, about the time said above mentioned agreement was made, to-wit, on the thirteenth day of September, 1899, execute and deliver to defendant, a quitclaim

deed, granting them the right to maintain and use said switch track in front of said premises, but not granting the right to store or stand cars thereon in front of said premises. But the plaintiffs say that no other consideration was given to or received by the plaintiffs for said deed than that given for the above mentioned agreement and the plaintiffs say that no other rights were intended to be granted by said deed than those expressed by said above mentioned contract, but that the rights and privileges granted by said deed were upon the same conditions as stated by said agreement. That is to say, that said company was not to stand its cars in front of said property.

"Your petitioners further state, to-wit: About two years prior to the making of said agreement said railroad company had wrongfully and unlawfully built a switch and had been unlawfully standing its cars thereon, in front of said premises and had thereby caused a depreciation of the rental of said property, and your petitioners had been damaged by the wrongful acts of defendant at the time of the making of the said agreement, to-wit, in the sum of fifteen hundred dollars, and that the payment by said railroad company of the said sum of six hundred dollars was on account of the damages your petitioners had suffered by the wrongful acts of said company prior to the making of said agreement and was made with the distinct understanding that said cars of said defendant were not to be stood in front of said premises.

"Your petitioners therefore ask that the said sum of six hundred dollars be regarded as part payment of so much as was really due by said railroad company to the plaintiffs at the time of the making of the said agreement, as your petitioners will fully show upon the trial of the issues herein, was much more than said sum of six hundred dollars *and petitioners offer*

*to accept and do on their part, whatever equity requires in the premises.*

"Your petitioners further state that they have been damaged by the wrongful acts of said defendant company in building the switch as aforesaid and keeping its cars standing in front of said premises from the time their tracks were laid as aforesaid, to the first day of November, A. D. 1902, the sum of three thousand dollars depreciation in the rental value thereof.

"Your petitioners further state that the placing of said cars in front of the premises aforesaid without the permission of the plaintiffs, was a wanton and willful disregard of the duty of the defendants to the damage of the plaintiffs in the sum of one thousand dollars, for which they ask judgment.

"Your petitioners further say that they have been damaged by the wrongful acts of the defendant in the total sum of four thousand dollars.

"Your petitioners therefore pray this Honorable Court that it cancel and annul said agreement and deed, and set the same aside and hold them for naught, that the said defendant may be required to pay the damages which have accrued to the plaintiff because of the depreciation in the rental value of said premises, because of the building of said switch, and standing cars on said switch, in front of said premises, from the date of the laying of said tracks to the 1st day of November, 1902, as aforesaid, less six hundred dollars paid as aforesaid, and such punitive damages as this court may see fit to inflict upon the defendant because of the premises and such other and further relief as may be deemed just and equitable."

The answer, barring an admission of defendant's incorporation, is a general denial.

(a) It is argued the bill is obnoxious to the cardinal equity maxim that he who seeks equity must do equity; that it makes no offer to put defendant

*in statu quo ante,* in that no tender or offer is made to return the $600 and costs paid under the compromise, but that the only offer is to credit that sum upon an unliquidated amount of damages, guessed off at $1,500. Changes are rung in defendant's brief on the foregoing contentions, but the pith of it all is as put by us.

Can the demurrer to the introduction of evidence stand on such fact? If the case were at law, the contention would be sound beyond question; but it is in equity and the better doctrine seems to be that under a bill (good otherwise) containing a general offer to do equity the chancellor, as the price of his decree, may let conscience have full play in doing her perfect work in disentangling the relations of the parties, and in placing them where they were before as nigh as may be. Such is the doctrine of Whelan v. Reilley, 61 Mo. l. c. 569 *et seq.* and cases cited. That case was followed in Clark v. Drake, 63 Mo. l. c. 360. In Kline v. Vogel, 90 Mo. 239, the doctrine of the Whelan case was somewhat shaken. But in a later case, Paquin v. Milliken, 163 Mo. 79, the question was again up, our decisions were marshalled, distinguished and applied. The reasoning of the Whalen case was greatly corroborated and fortified by the exhaustive consideration given in the Paquin case, and the doctrine needs no new exposition.

In leaving the matter we may refer to Shuee v. Shuee, 100 Ind. l. c. 481. In that case it was said: "It is urged that the court below should have sustained a demurrer to the bill, because it failed to show an offer to rescind on the part of the plaintiff before filing the bill, and it is argued that because it appears from the facts as found by the court, that no offer to rescind was made, nor to return the money paid as the consideration of the settlement, before the suit was commenced, the court could make no decree in plaintiff's favor setting aside the settlement. It is

always within the power of a court of equity, where its decree is invoked, to require, as 'the price of its decree,' that the person invoking it shall submit to equitable terms, and accordingly a chancellor always inquires concerning the equities which the plaintiff must do, in order that he may be entitled to the relief which he seeks. Whenever any benefit has been received under a contract which the court is asked to set aside, the court will fasten a trust on the conscience of the party, in respect of such receipts, and direct an account and repayment.''

Such, too, was the conclusion reached by all the judges in Haydon v. Railroad, 117 Mo. App., *supra,* l. c. 90 to 94, inclusive.

The premises considered, we rule the point against defendant. In doing so we put aside certain contentions; for instance, it is pointed out (as we grasp it) that the plan of the bill is to off-set the hard cash paid by defendant by way of compromise against a running account of unliquidated damages. It is argued that this cannot be done, that the compromise amount is a fixed sum settled by contract and that the other is *in nubibus* (mere moonshine). But it must be apparent that question, if we state it accurately, is afield at this stage of the case. This, because the chancellor could mold his decree so as to adjust all its ramifications to the very nicest requirements of full equity. If, on the equity of the whole case on the hearing, defendant be entitled to repayment of the compromise sum and costs as the price of recission, the decree could go that way. Clearly there is nothing in plaintiffs' mere offer putting the conscience of the chancellor in bonds in that behalf.

Again, it is argued the bill is bad for that it commingles a cause of action in equity with one at law—that plaintiff should have sued in two counts, one in equity for a rescission and one at law triable to a jury for the unliquidated damages for the tort. But the

same disposition should be made of this as of the other contention. The question in hand might (whether well or ill) arise on special demurrer, but cannot arise on a mere objection to the introduction of any testimony based on the ground that the bill fails to state a cause of action in equity. No one would contend that the matter of rescission was not in equity. That being clear, we need look no further. Therefore, a ruling on this phase of the case is reserved.

(b) With the foregoing preliminary questions at rest, we confront the main proposition, *viz.*: Under the allegations of the bill is there a cause of action stated for rescission of the compromise contract and deed? In determining the question, it is well at the outset to remind ourselves of some general propositions indicating the trend of the judicial mind in this behalf. The question of rescinding deeds and contracts for the non-performance of conditions precedent or subsequent has been often before this court. The question always hinges on the dependence or independence of the covenant in the deed or contract. Thus, in Freeland v. Mitchell, 8 Mo. 487, Thomas sold to Freeland some land and bound himself in the penal sum of $600 to give Freeland possession. Presently (Thomas dying) Mitchell, his administrator, brought an action of debt for the balance of purchase price. The declaration did not aver any delivery of possession and defendant demurred on that ground. The question was whether the delivery of possession of the land was a condition precedent to the recovery of the purchase money. The conclusion reached by the court was that if a penal sum had not been fixed by the contract for failure to give possession then the covenant in the contract would have been considered dependent—*i. e.*, no delivery of possession, then no payment of the purchase price. But as there was a penal sum provided for in the contract for such failure, the covenants were not inter-dependent but were inde-

pendent. The general principle guiding to that determination was said to be this: "The only principle to be extracted from the numerous cases in relation to the dependence or independence of covenants is, that they are to be construed according to the intention and meaning of the parties, and the good sense of the case."

Studdard v. Wells, 120 Mo. 25, is an illuminating case on the general law. There the widow and children of Theodore Studdard brought ejectment against the executor of the last will of Chas. F. Studdard. Chas. F. was the father of Theodore and, with Matilda, his wife, conveyed the *locus* to Theodore by a deed reciting a consideration of $3,000 paid, and further reciting that the land was a gift, that it was to remain in possession of grantors during their natural lifetime and was to become the property of Theodore on the death of grantors. A provision was inserted that Theodore was to pay the taxes, followed by this: "and has to support the said Charles F. Studdard and Matilda Studdard during their natural lifetime." At the date of the deed all parties resided on the land. Matilda died, then Theodore. Up to his death he had supported his father and also his mother while she lived. Shortly after Theodore's death a squabble arose between his widow and Chas. F. and the widow left the premises and thereafter furnished no support to him, nor did Theodore's estate. The merits of the quarrel were not deemed controlling by this court. Two or three years subsequently Chas. F. died testate and by his will made disposition of the land different from that in his former deed. Thereupon the widow and minor children of Theodore sued for possession. It was ruled that the support of Chas. F. was not expressly made a condition precedent in the deed. The remaining question was whether the conveyance was made upon a condition subsequent. In ruling on that question it was pointed out as of sig-

nificance that in most of the cases in this court arising out of conditions subsequent, *the conditions were clearly expressed.* Messersmith v. Messersmith, 22 Mo. 369; Moore v. Wingate, 53 Mo. 398; Clarke v. Brookfield, 81 Mo. l. c. 513; Ellis v. Kyger, 90 Mo. 600; O'Brien v. Wagner, 94 Mo. 93, are cited as cases so marked and distinguished. BLACK, P. J., writing for the court, commented on those cases as follows: "In these cases words of condition were used or there were clauses of re-entry or reverter. It is a familiar rule often asserted in the books that conditions subsequent are not favored in the law, because they have the effect in case of breach to defeat vested estates; and when relied upon to work a forfeiture they must be created in express terms or by clear implication. [2 Wash. on Real Prop. (5 Ed.), 7; Morrill v. Railroad, 96 Mo. 174.] And courts will construe clauses in deeds as convenants rather than conditions, if they can reasonably do so. [2 Wash. on Real Prop. (5 Ed.), 4.] It is also true that the question whether a clause in a deed is a condition or a covenant, is one of intent to be gathered from the whole instrument by following out the object and spirit of the deed or contract. [St. Louis v. Wiggins Ferry Company, 88 Mo. 618.] Now the substance of this deed is, that the grantors convey the land to their son, reserving to themselves a life estate, with the further statement that he is to pay the taxes and support the grantors during their lives, and at their death he is to have possession. No apt or appropriate words to create a condition are used; nor is there any clause of forfeiture or of re-entry or of reverter. We are unable to find anything in this deed, whether we treat it as a gift, or as made for a money consideration, which will justify us in saying it is a deed upon condition subsequent. To say the stipulation in the deed to pay the taxes and support the grantors is a condition subsequent, the non-performance of which will defeat the estate grant-

ed, is to make a stipulation for the parties which they did not see fit to make for themselves. This we cannot do."

In addition to the general principles, outlined above, we may add that it is familiar doctrine that forfeitures (putting it with mildness) are not favored in equity; and that (while not controlling) it is not entirely without significance that there is no express provision making the subsequent standing of cars on the switch a condition subsequent, or a mutual dependent covenant, nor is there shown to be any clause of reverter in the deed, and we are left to an interpretation of the contract by the good sense of the thing in the light of its subject-matter and language used.

Further, the bill does not proceed on the theory of fraud, accident, surprise, mistake or duress; and it must be admitted that, as a general rule, rescission is an equitable remedy restricted to cases of that character.

However, there is another doctrine, *viz.*: Rescission is an equitable remedy applied in exceptional cases where there is failure of the entire consideration of the contract or where there is such radical nonperformance of a mutual dependent covenant, going to the very root and life of the contract, as amounts to "abandonment of the contract and releases the other party from any duty to further recognize its obligations." [7 Am. and Eng. Ency. Law (2' Ed.), 121.]

A sensible limitation on the last doctrine is stated in the work last cited (volume 24, p. 619) to be: "A bill for rescission cannot ordinarily be maintained where the ground of relief is merely a breach of contract for which the complainant can obtain adequate compensation in an action at law. Courts of equity sometimes, however, exercise jurisdiction to rescind contracts upon the ground of a breach or non-performance by the defendant, in cases where the plaintiff's remedy at law would be inadequate."

Plaintiffs must stand or fall on the doctrine last announced, and we have come to the conclusion that the bill, measured by that doctrine and the general principles already outlined, does not state' a good cause of action in equity. This because the bill does not measure up to the requirements of the law nor state a case on all-fours, in principle, with cases relied upon by learned counsel to sustain it. Those cases are discussed in the separate opinion of Judges BLAND, NORTONI and SCHNURMACHER, in Haydon v. Railroad, 117 Mo. App. *supra*. Those opinions should be read in connection with this; for it would serve no useful purpose to fully restate the reasoning employed by the majority of the Court of Appeals.

Reliance is put by learned counsel of plaintiffs on Lincoln Trust Co. v. Nathan, 175 Mo. 32. That case was a suit for rent arising on a written lease. The parties to that lease had the forethought to insert a fire clause. That clause provided that the landlord rebuild or repair in case of fire as soon as possible and in that immediate connection it was further provided that, in consideration of the delivery of the new building to the tenants for occupancy, the tenants agreed to pay the heavy rent reserved for the period of the erection of said new building. A fire occurred. The landlord was guilty of inexcusable delay in rebuilding. The tenants were compelled to make permanent arrangement for another building to conduct the mercantile business. They paid two months'. rent after the fire while the demised premises were unfit for business purposes, and, presently, were sued for the rent of subsequent months. In defense they pleaded the provisions of the lease referred to, asked its rescission and to recover the two months' rent paid after the fire. This court had no difficulty in reasoning out the conclusion, obviously sound, that in a case of that sort it would be against conscience to permit the landlord to violate the provisions of the lease requir-

ing him to rebuild and at one and the same time exact from the tenant rent for premises, rendered unfit for use through the landlord's tortious delay. It was well held that the covenant to pay rent during the time the premises were devastated by fire was dependent upon the covenant to rebuild—this in effect was a holding that there was an entire abandonment and repudiation of that portion of the lease yet to be performed—a total failure of consideration for the executory part of the lease, and rescission was decreed with recovery of the rent paid after the fire in reliance on performance.

Not only is the case dissimilar to the case at bar in vital features, but, observe, there was no attempt to have the lease ripped up from its inception and to recover for *all* rents paid. The executed part of the lease stood and the rescission related back to the fire. Here, there is an attempt to cancel the compromise agreement *in toto,* whether executed or executory, and to put the parties where they were at the start, with plaintiffs' right to recover all past and settled damages, as well as future, restored to them. In the absence of fraud charged and proved, the rescission of an executed contract is not equitable doctrine, but a rescission might go as to part unperformed where there is a breach amounting to abandonment. If the doctrine of the Nathan case be applied closely to this, the rescission would only relate back to the time when the defendant violated its covenant, if covenant it be; and, in that view of the matter, plaintiffs do not contend there was any necessity to go into equity to rescind the contract as to *unreleased damages,* subsequent to the compromise, for allowing cars to stand on the switch. This, for the plain reason that they can stand on that provision at law and recover their damages.

Other cases are relied on by learned counsel. For example, City of Grand Haven v. Grand Haven Water

Works, 99 Mich. 106; Farmers' Loan and Trust Co.
v. Galesburg, 133 U. S. 156.  Those cases are con-
sidered and properly distinguished in the opinions of
Judges BLAND and SCHNURMACHER, *supra* (q. v.). There
contracts were entered into to furnish water suit-
able in quality and amount, and proper fire pressure
to extinguish fires in Galesburg and Grand Haven.
It was ruled there was not only an entire failure of
consideration, but more, to-wit, *an inability to per-
form,* and rescission was decreed.  A close gloss of
those cases shows that the drastic result reached was
predicated on vital facts absent from the case at bar.

In a soundly-reasoned case, Union Pac. R. R. Co.
v. Travelers Ins. Co., 49 U. S. App. 752, the test formu-
lated by Lord MANSFIELD, in Boone v. Eyre, 1 H. Bl.
273, is approved, *viz.*: "Where mutual covenants
go to the whole of the consideration on both sides,
they are mutual conditions, the one precedent to the
other.  But where they go only to a part, where a
breach may be paid for in damages, there the defend-
ant has a remedy on his covenant, he shall not plead
it as a condition precedent," Judge SANBORN, speak-
ing for the court, commented as follows: "The breach
of a covenant of the first class, a dependent covenant
which goes to the whole consideration of the contract,
gives to the injured party the right to treat the entire
contract as broken and to recover damages for a total
breach" (citing authorities).  "But a breach of the
covenant of the second class, a covenant which does
not go to the whole consideration of the contract, but
is subordinate and incidental to its main purpose, does
not constitute a breach of the entire contract or put an
end to the agreement, but the injured party is still
bound to perform his part of the contract, and the only
damages he can recover consist in the difference be-
tween the amount which he actually received or lost
and the amount which he would have received or lost

if the broken covenant had been kept'' (citing numerous cases).

Now, what was the ''whole consideration'' of the contract and deed to be rescinded here? Damages to accrue in the future from blocking access to or egress from plaintiffs' real property by allowing cars to unnecessarily stand on the switches? Not at all. That character of damages flowing from that character of wrong, then non-existing because future, was merely incidental. To get at the real consideration, we must look to the character of the controversy. Plaintiffs were contending that the switch was unlawfully laid and that *any* movement of cars whatever on that unlawful switch was actionable, *and that the unlawful location of the switch was actionable.* They were willing to accept money to settle that controversy. They did accept money and by that act, in the absence of fraud, settled it forever, and by deed conveyed to defendant the right to locate and use the switch for switching purposes, on the theory, presumably, that they held the fee in the land appropriated by the switch (probably a street). Such was the controversy and main consideration in its settlement.

The good sense of the thing is that the location and use of this switch, barring the standing of cars thereon unnecessarily, were, as said, set at rest for all time by the compromise, and that all past and prospective damages incident to the location of the switch and the proper use of it were estimated, paid and wiped off the slate. The contract means that further damages for the improper use of the switch were not settled and that defendant agreed not to make such specified improper use of it.

Moreover, do not courts favor amicable settlements in the absence of fraud, as here? Does equity proceed in rescission in a revengeful mood? Why rip up this settlement when the failure to perform does not go to the whole consideration and when there is

no obstacle in the road of recovery of full damages by a suit at law for non-performance in one particular? If the words of the contract following the phrase, "but with the distinct understanding," be construed as a covenant that defendant will keep its switch cars moving and not unnecessarily standing in front of plaintiffs' property, then what legal reason can be given why full relief by way of damages for its breach may not be recovered? We know of none. Or if plaintiffs prefer to ignore the contract and sue for the wrong done them in obstructing access to and egress from their property since the compromise agreement, could defendant interpose the contract as a defense? Would not its very profert in court show that such "prospective" damages were not compromised?

It has been loosely said that if the contract would not have been entered into but for the covenant broken, then there is such failure of consideration as will entitle the innocent party to rescission. We find but one case going to that extent—an old one in Louisiana, Moreau v. Chauvin, 8 Rob. 157. That case seems to have ridden off on a construction of the Louisiana Code—a code based on the civil law. As a general proposition, we do not agree to the rule announced. Many provisions in many contracts do not go to the *whole* consideration or touch the life and essence of the contract and yet, peradventure, the contract would not have been made if the provision had not been inserted. The approved doctrine is contrary to the holding in the Moreau case, and the rule announced there is too narrow. Therefore, if plaintiffs had proved by oral testimony that they would not have enterd into the contract of compromise and executed the deed, except the provision we have been considering had been put into it, yet it is for the court to construe the contract, and, if such evidence were admissible, we must still

hold the contract and deed were not subject to be rescinded on the case made by the bill.

Let the judgment of the circuit court be affirmed. All concur.