**EVANS et al. v. TURNEY et al.**

No. 26460.   May 19, 1936.

Rehearing Denied Oct. 13, 1936.

E. E. Blake, for plaintiffs in error.

Frank O. Eagin, for defendants in error.

PER CURIAM. This case involves an appeal from a judgment of the district court of Oklahoma county, Okla., in favor of the defendant in error, defendant below. The parties will be referred to as plaintiffs and defendant, as they appeared in the lower court.

The action sought the rescission of a contract made by the parties to the action. The facts alleged in the petition are in substance as follows: Plaintiffs allege that they and the defendant Turney were joint owners on, and after, June 28, 1929, of certain land in Woodward county, Okla., referred to as the Sontag farm, each owning an undivided one-half interest therein, and in consideration of the premises and covenant by the said defendant that she would furnish the money to develop and mine certain deposits of bentonite or fuller's earth upon said tract of land, and an adjoining tract known as Walters farm, plaintiffs conveyed to the defendant an undivided one-sixth interest in the Sontag farm, making their interests two-sixths to plaintiffs and four-sixths to defendant.

The petition further alleges that thereafter

the Fullers Earth Company, an express trust, was formed, which acquired the mineral rights under the Sontag farm for 200,000 shares of beneficial interest in said tract, of which 100,000 shares were issued to defendant Turney, and 50,000 shares were issued to plaintiffs, and that the defendant Turney neglected and refused to furnish money or to pay the expenses or develop the said Sontag and Walters farms, and for that reason the consideration failed.

The petition further alleges that at the time of the execution of the said deed conveying tiffs one-third, and that it was further agreed gages outstanding against the Sontag farm, aggregating $1,800, of which amount defendant assumed and paid two-thirds, and plaintiff one-third, and that it was further agreed that, if the defendant failed to develop said properties, she would reconvey the said interest to the plaintiffs, and they in turn would repay her the amount by her paid.

The prayer asks for a cancellation of the deed and for a transfer of 25,000 shares of the beneficial interests of said trust to plaintiffs.

To this petition the defendant filed her demurrer, which was, by the court, overruled, exceptions being allowed. The defendant then filed her answer, which contained both affirmative and negative allegations. She affirmed that the petition did not state facts sufficient to constitute a cause of action against her, and that she had received no stock, by reason of the ownership of the one-sixth interest transferred to her, but she had paid for all such shares. She denied all allegations of the petition and asserted that if an agreement to develop the property had been made, the same had been complied with.

The court ruled that the action was not one for a jury and proceeded to try the case, which resulted in a judgment for the defendant, from which this appeal is prayed.

There are six assignments of error, none of which are briefed. Plaintiffs base the right to reversal on the following proposition set out in the brief:

"The sole question then, did plaintiff's evidence sustain his petition, and if so will the court protect one who has conveyed property on agreement to develop when development has not been done."

In view of the fact that the lower court heard the evidence and that plaintiffs base their right to reversal on this record evidence, it is useless for us to determine whether error was committed in refusing to sustain the demurrer to the petition, and also, whether the court properly held that it was not a jury case.

We will, therefore, determine whether the judgment is reasonably sustained by the evidence regardless of whether the case is jury or nonjury, as shall be more fully set out hereafter.

The undisputed evidence discloses that the plaintiff Chester L. Evans and the defendant Mrs. B. E. Turney owned the Sontag farm and that they understood that the same was underlaid with bentonite or fuller's earth, and both were desirous of having the same developed. It was undoubtedly the intention of the parties that the defendant Turney was to develop this property at the time she received from the plaintiff the deed conveying to her the additional one-sixth interest. This is evidenced by the fact that she expended quite a sum of money in attempting to install proper machinery. The venture, however, was not successful, as the defendant failed to make good her promise and the original adventure was abandoned.

The parties then conceived the idea of creating an express trust, in which shares of the beneficial interests were issued to the parties in proportion to the interests they then owned in the land, namely, two-thirds to the defendant and one-third to the plaintiff. This trust is a very elaborate arrangement and vests in a majority of the trustees absolute right to carry into execution the provisions thereof, one of which provisions is as follows:

"(B) To improve, manage, develop, sell, assign, transfer, lease, mortgage, pledge or otherwise dispose of or turn to account or deal with all or any part of the property of this trust, and from time to time to vary any investment or employment of capital of this trust."

The proof further shows that the plaintiff himself wrote this trust instrument. It is, therefore, patent that he cannot be heard to complain of its provisions.

The proof further shows that the parties were interested in another trust known as the Natural Mineral Company, and that the assets of this company became the property of the Oklahoma Fullers Earth Company, as well as the additional property known as the Walters lease. After the title to all of this property was vested in the Oklahoma Fullers Earth Company, shares were issued as follows: Ninety thousand shares to the defendant Turney, 100 shares to a Mr. Cole, and 50,000 shares to the plaintiff.

The evidence further shows that thereafter the Oklahoma Fullers Earth Company, acting through its regular officers, made and delivered to Benson Brothers a lease for the purpose of developing this property, and that the plaintiff participated in and received checks from the Oklahoma Fullers Earth Company, both for bonuses and royalties, arising from the development of this property.

The evidence further discloses that in order to develop the Walters farm, as well as the Sontag farm, the rights under the leases were reduced to community interests, that is to say, the royalties were to be paid to both, regardless of where the mineral was mined.

After carefully reading the entire record and examining the briefs filed, we fail to find where any fraud was perpetrated on the plaintiff.

The promise to develop the property can, in no event, rise higher than a condition subsequent, and, that being true, the rule regarding cancellation for nonperformance is that the promise must go to the whole consideration of the contract. From the case of Haydon v. St. Louis & S. F. R. Co., 222 Mo. 126, 121 S. W. 15, the rule is stated as follows:

"Rescission of deed is an equitable remedy which will be applied only in exceptional cases, when there is a failure of the entire consideration of the contract, or where there is such radical nonperformance of a mutual dependent covenant as amounts to abandonment of the contract, and releases the other party from any duty to further recognize its obligations."

To the same effect are the following authorities: Cheney v. Bierkamp, 58 Colo. 319, 145 P. 691; Crampton v. McLaughlin Realty Co., 51 Wash. 525, 99 P. 586; Brevort v. Hughes, 10 Colo. App. 379, 50 P. 1050.

Manifestly, in the above case, the consideration, calling for development, did not go to the entire consideration, as the defendant assumed and paid two-thirds of the mortgage indebtedness against the property.

Again, it is well settled that, if the complaining party has allowed a change to take place so as to modify the situation with reference to the property involved, or, if he retains benefits under the original or new contract, then rescission will not be declared.

In Appleman et al. v. Pepis, 117 Okla. 199, 246 P. 225, the rule is stated as follows:

"Where a party to a contract pursues a course of action that expresses an intention to be bound by the contract and expresses an intention to enjoy the benefits of the contract, he cannot then escape the burdens of the contract."

The rule is stated by the Supreme Court of Utah, in the case of LeVine v. Whitehouse, 109 P. 2, as follows:

"A party misled must, as soon as he learns the truth and discovers the falsity of statements relied on, disaffirm the contract with all reasonable diligence, and he cannot derive all possible benefit from the transaction and then claim relief from his own obligation by a rescission or refusal to execute."

To the same effect are the following authorities: Farmers State Bank v. Harrington, 98 Okla. 293, 225 P. 705; Croak v. Trentman, 50 Okla. 659, 150 P. 1088.

The plaintiffs undoubtedly accepted benefits under the original agreement, in the following particulars: By retaining the payments made by the defendant on the mortgage indebtedness and not tendering or offering to repay the same; by accepting payment for bonuses and royalties from the Fullers Earth Company; by agreeing to a division of the fund derived from the sale of mineral on both places; taking less in consequence of being relieved of the necessity of developing the Walters lease.

There is no fraud, either charged or proven, and, therefore, the plaintiffs cannot recover under the rule stated in Fraley, Adm'r, et al. v. Wilkinson et al., 79 Okla. 21, 191 P. 156, which is as follows:

"There must be either a specific averment that the contracting party made the promise with the secret intention of not performing it, or facts must be pleaded establishing such intent not to perform."

Under the procedural provisions in force in this state, as construed by this court, the plaintiffs are required to state facts entitling them to relief either legal or equitable. If such petition states a cause of action, it will not be dismissed simply because the wrong remedy is chosen. Such error will usually be overlooked and relief will be granted to the extent justified by the proof.

In the case at bar plaintiffs' proof utterly fails to entitle them to a rescission of the contract. Ball v. White, 50 Okla. 429, 150 P. 901.

From an examination of the whole record, it clearly appears that the plaintiffs are not entitled to recover on any theory of the case, whether legal or equitable, and that the evidence reasonably supports the judgment of the trial court; therefore, it should be sustained, and it is so ordered.

The Supreme Court acknowledges the aid of Attorneys J. S. Severson, Hal H. Rambo, and Ed L. Jones in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Severson and approved by Mr. Rambo and Mr. Jones, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

OSBORN, V. C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.