## WALKER et al. v. LIMESTONE OIL & GAS CO. et al.

No. 27783. March 8, 1938.

Rehearing Denied June 7, 1938.

Pryor & Sandlin, for plaintiffs in error.

Anglin & Stevenson, O. S. Huser, Orr & Woodford, and Floyd H. Norris, for defendants in error.

WELCH, J. The parties occupy the same relative position here as in the trial court and will be hereinafter referred to as plaintiffs and defendants.

Plaintiffs sought to cancel an oil and gas lease on 80 acres of land upon which defendants had drilled several producing oil wells and from which plaintiffs had received and were receiving a royalty of one-sixth of the oil produced. The district court entered a judgment canceling the lease as to all sands under and other than the sand from which defendants' wells were producing, and sustaining the lease as to that particular sand, which was known as the Calvin sand. The plaintiffs appeal and group their assignments of error under one proposition: that the judgment of the court is not supported by either the law or the evidence.

There is no dispute as to the essential facts in the case. The plaintiffs are successors in interest of the original lessor, and defendants are successors in interest of the original lessee. The oil and gas lease was originally executed and placed in escrow under an agreement which reads in part as follows:

"Whereas, party of the first part desires to lease the said lands to the party of the second part for oil and gas mining purposes to secure the drilling of a well thereon under the covenants and agreements hereinafter set out.

"Now, therefore, it is agreed by and between the parties that the party of the first part will this day make and execute an oil and gas lease covering the above-described lands for a period of one year, and as long thereafter as oil and gas is produced in paying quantities from the said lands, said lease to be executed on a regular Producer's 88 form, providing for a royalty of one-eighth of the gas, one-eighth of the oil and one-eighth of the casing-head gas produced from the said premises.

"It is agreed that the said lease shall be placed in escrow in the First National Bank of Holdenville, Oklahoma, to be held by said bank for a period of thirty days. If, within the said period of thirty days, the party of the second part shall erect a derrick and begin the drilling of a well, that said lease shall be delivered to the party of the second part upon the spudding in of the said well, or to be delivered to such person as he shall procure to drill such well.

"It is agreed that the well herein provided for shall be drilled in the center of the north forty acres of said land, and shall be drilled to what is commonly known as the Booch sand, which is at the said location found at a depth of approximately 2,925 feet. In the event the well so drilled by the party of the second part or his associates is a producing well in paying quantities, then and in that event the party of the second part shall begin the drilling of a second well at a location in the center of the south forty acres of said tract. It is further agreed that the drilling of the said second well shall be begun within a period of sixty days from the completion of the first well, and in the event such second well is not begun within such period, then and in that event the party of the second part, or his associates, shall make, execute and deliver to the party of the first part, a release of the oil and gas lease in so far as it affects the said south forty acres of said tract. In the event the said second party shall fail to drill such second well, there shall be no penalty for such failure, except a surrender of the lease on the said south forty acres.

"It is agreed that the second well, if begun, shall be drilled to the same depth, and under the same conditions and terms as the first well.

"In the event said first well is not begun within the aforesaid period of thirty days from this date, this contract shall be void and the lease contract herein provided for shall be returned to the party of the first part.

"It is agreed that both wells herein provided for, if second well is begun, shall be completed within a period of one year."

The oil and gas lease was on a form commonly used in the oil business and contained this paragraph:

"It is agreed that this lease shall remain in force for a term of one year from this date, and as long thereafter as oil or gas or either of them is produced from said land by lessee."

The well was commenced within the time provided by the agreement and the lease was delivered to the lessee. Drilling was continued on the well until the Calvin sand was discovered. The well was completed in the Calvin sand at a lesser depth than the

Booch sand, and production began at about 250 barrels of oil per day. After completion of this shallow sand well the plaintiffs executed a supplemental agreement which reads in part as follows:

"Whereas, second parties now desire to defer their obligations under said escrow agreement and oil and gas lease, to drill a well or wells on said premises to the Booch sand, found in said locality at a depth of approximately 2,925 feet, as more fully described in said escrow agreement; and

"Whereas, first parties are willing to permit the said second parties herein to defer their obligations under said escrow agreement, to drill a well or wells to said last above mentioned depth for certain considerations hereafter described:

"Now, therefore, for and in consideration of an equal one-sixth (1/6) royalty in lieu of an equal one-eighth (1/8) royalty as set out in the original lease, and other good and valuable considerations, first parties hereby and herewith covenant and agree that if, as, and when said second parties shall drill a well or wells on said aforedescribed premises to a depth of less than 2,925 feet, whereas and wherefrom they shall be able to produce oil and gas, or either of them, in paying quantities, the obligation and liability of said second parties, as successors in interest to the said B. Rixleben the party of the second part to original escrow agreement and lessee in the oil and gas lease executed pursuant thereto, shall be deferred and continued for a period of sixty (60) days for each well drilled, completed and operated as a commercial producer at a lesser depth than 2,925 feet.

"For the same consideration, the parties hereby further stipulate and agree that the within supplemental agreement shall, in no manner whatsoever modify or alter the terms and conditions of the escrow agreement, and the oil and gas lease, more fully described hereinabove, except to the extent hereinbefore provided; and that the within supplemental agreement shall, in no manner whatsoever be deemed to relieve the second parties of their obligations to drill a well to the Booch sand, as provided in said escrow agreement, and/or to defeat or destroy the rights of first parties herein. * * *"

Thereafter 13 additional wells were drilled to the Calvin sand and plaintiffs received and are receiving royalty payments therefrom.

It is plaintiffs' contention now that the lease was given in consideration of a promise to drill two wells to the Booch sand and that the consideration has wholly failed and the lease should be canceled.

It might be assumed that plaintiffs had a right to rescind the contract and cancel the lease when the first well definitely stopped drilling and was completed in a shallow sand, the Calvin sand. They did not exercise that right, but entered into a supplemental agreement. The supplemental agreement not only extended the time for the drilling of a Booch sand well, but clearly authorized the drilling of wells of lesser depth than the Booch sand, at 2,925 feet, and under the terms of the lease except as to the amount of royalty payments. Defendants were engaged for a period of more than two years in drilling and developing the Calvin sand, and as oil was recovered from said sand plaintiffs received and accepted royalty payments in amounts in accordance with the supplemental agreement and the lease.

Although in the beginning the drilling of two Booch sand wells was the entire consideration for the lease, it did not remain so, but with the assent of the plaintiff, the defendants at great labor and expense produced oil from the Calvin sand and paid substantial sums to the plaintiffs as royalty.

In Evans v. Turney, 177 Okla. 550, 61 P.2d 237, this court in the syllabus held:

"Where the conditions of a contract have been so changed by the voluntary assent of the complaining party as to create new obligations, and benefits accruing under such modified contracts have been retained, such acts will estop the party from seeking a rescission thereof."

No complaint is made about that part of the judgment canceling the lease as it pertains to the Booch sand under said land. The record supports the judgment of the trial court in refusing to declare a rescission of the agreement and in sustaining the lease as it pertains to the Calvin sand under said land.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and HURST, JJ., concur.