## WELCH v. RUBY et al.

No. 33169.    Oct. 5, 1948.

*198 P. 2d 432.*

Thomas E. Neary and Benjamin B. Wheeler, both of Muskogee, for plaintiff in error.

Forrester Brewster and Russell Ruby, both of Muskogee, for defendants in error.

CORN, J. Plaintiff, Bessie Gooch, formerly Welch, brought this action against defendants, heirs and executors of G. R. Ruby, deceased, for possession and to quiet title to five improved lots in the city of Muskogee, and for other relief.

The case was tried upon plaintiff's first amended petition, wherein she alleged ownership of legal and equitable title to the following property:

"Lots 'D', 'F', 'G', 'H' and 'I' in Ferguson's Sub-Division of the South 42 feet of Lot 8, all of Lots 9 and 10, and all of Lot 11, except the South 7 feet thereof, all in Block 62, in the City of Muskogee, Oklahoma.

"Said Lots are more particularly described as follows, to wit:

"Beginning at a point on the West line of said Lot 11 in Block 62 of the original plat of the City of Muskogee, Oklahoma, seven (7) feet North of the Southwest Corner thereof; Thence running North along the West line of said Block Sixty-Two (62), a distance of 64 feet to a point; Thence running East on a line parallel with the South line of Block 62, a distance of 126 feet to a point; Thence running North and parallel with the West line of Block

62, a distance of 126 feet to a point; Thence running Easterly and parallel with the Southerly line of said Lot 11, a distance of 102.5 feet to a point; thence Southerly along the Easterly line of Lots 8, 9, 10, 11, a distance of 190.5 feet to a point; thence running Westerly and parallel with the South line of said Lot 11, a distance of 205 feet to the point of the beginning.

"Said Lot 'D' is on South Second Street; and Lots 'F', 'G', 'H' and 'I' are on South Main Street,"

by virtue of a warranty deed from G. R. Ruby dated January 15, 1940, executed to carry out a written sales contract entered into between plaintiff and deceased in 1938. Plaintiff alleged defendants claimed some right, title and interest in the property and that such claims were void; that she was in possession of lot D, and entitled to possession of the other four lots; that at the time Ruby deeded the lots to plaintiff for a recited consideration of $700 she executed a note for $900, secured by a mortgage on this and other property (farm land), which note had been paid and the mortgage released. Plaintiff asked judgment for possession of the four improved lots held by defendants, to recover rents therefrom, and for damages for defendants' wrongful withholding of possession.

Plaintiff alleged that at all times after March, 1937, G. R. Ruby acted as her agent and trustee in the purchase of this property from the First National Bank of Fort Smith, Ark.; that plaintiff paid him the $700 cash and a note and mortgage for the balance with the understanding that upon title being perfected the title would be transferred to plaintiff; and went into possession of the premises described as lot D; that Ruby acted as her agent and trustee in all transactions connected with the property including repair of the premises and collection of rents, until his death, and that Ruby's possession under the deeds from the bank was possession for plaintiff's benefit as her agent; that the deed from Ruby to plaintiff, upon her compliance with all the terms of their agreement, put title to all the premises in plaintiff. She then asked judgment for possession of the four remaining lots held by defendants, for judgment for rents therefrom, and for damages arising from defendants' wrongful withholding of possession.

Defendants answered by a general denial but admitted plaintiff's ownership and possession of lot D and that they claimed ownership and were in possession of the other four lots. Execution of the contract above mentioned was admitted but defendants denied G. R. Ruby at any time acted as plaintiff's agent or trustee as alleged, and that plaintiff, pursuant to contract, had accepted a warranty deed to lot D which vested in her title to the property she contracted to buy; and that no other consideration had been paid and plaintiff had no right or interest in the other property herein involved. Defendants then asked judgment quieting title to all the property other than lot D, and such other relief as equity might decree.

Plaintiff's reply denied generally the allegations of the answer, and specifically denied that the warranty deed was delivered to her pursuant to a statement signed by her January 6, 1938, wherein plaintiff agreed to purchase lot D and give a mortgage to secure payment of $700 purchase price, or that such statement was ever in force, and realleged that Ruby at all times was acting as her agent in purchase of the property described heretofore by metes and bounds.

At the trial plaintiff introduced the warranty deed from Ruby and a plat showing lot D to be a portion of Ferguson's Subdivision of the city of Muskogee, Oklahoma, described by metes and bounds and rested her case. The deed was in the following form:

"Know All Men by These Presents: That G. R. Ruby, a single man, of Muskogee, Oklahoma, in consideration of the sum of Seven Hundred Dollars in

hand paid, the receipt of which is hereby acknowledged, hereby grant, bargain, sell and convey unto Bessie Welch of Muskogee, Oklahoma, the following described real property and premises situated in Muskogee County, Oklahoma, towit:

"Lot D of Fergusons Subdivision of the South 42 feet of Lot 8, all of lots 9 and 10 and all of lot 11 except the South 7 feet thereof in Block 62 of the City of Muskogee, Oklahoma, more particularly described as follows: Beginning at a point on the westerly line of Lot 11, of Block 62 of the original plat of the City of Muskogee, seven feet north of the southwest corner thereof, running thence northerly along the westerly line of said block, 64 feet, thence easterly and parallel with the southerly line of said lot 11, 102.5 feet, thence northerly and parallel with the westerly line of said block 62, 126 feet, thence easterly and parallel with the southerly line of said lot 11, 102.5 feet, thence southerly along the easterly line of lots 8, 9, 10 and 11, a distance of 190.5 feet, thence westerly to the point of beginning, together with all improvements thereof and the appurtenances thereunto belonging, and warrant the title to the same.

"To Have and to Hold the said described premises unto the said Bessie Welch, heirs, successors and assigns forever free clear and discharged of and from all former grants, charges, taxes, judgments, mortgages, and other liens and encumbrances of whatsoever nature, except taxes for the years 1938 and 1939.

"Signed and delivered this 15th day of January, 1940.

"G. R. Ruby."

Defendants introduced evidence to establish that the First National Bank of Fort Smith held these lots until 1937; that plaintiff had occupied the premises on lot D during this period; that the bank quieted its title to all the property and in 1938 accepted Ruby's offer for the property and entered into a contract with him for the purchase thereof and thereafter conveyed the property to Ruby by warranty deed.

One witness for defendants testified he handled the collection of rents on the property until 1942 and tried to collect from plaintiff, but she refused to pay; that he also handled the sale to plaintiff and prepared the deed which Ruby signed, and the note and mortgage which plaintiff signed and which he and plaintiff took and recorded after paying some taxes.

Two other witnesses testified to helping Ruby with his business. One of these witnesses had heard plaintiff discuss the matter of purchase of (lot D) with Ruby. The other witness testified that from 1942 until Ruby's death he collected rents from the property. Both testified that only after Ruby's death did plaintiff notify them to quit collecting rents, and that she also served notice on the other tenants to this effect.

An attorney, who had represented Ruby when he was negotiating for purchase of the property, testified that he knew of Ruby's intention to sell the South Second street property (lot D) to plaintiff and the witness had discussed the matter with her, and she made no claim that she was buying anything but lot D. The witness drew a contract between plaintiff and defendant for the purchase and plaintiff came to his office and signed two of the copies, keeping one for himself, and Ruby later signed the copy retained by the witness. He later represented Ruby in matters concerning the property, and at Ruby's direction unsuccessfully attempted to collect from plaintiff for rent due on lot D.

Upon consideration of the evidence the trial court found the issues generally for defendants, and made the further specific findings that the warranty deed from Ruby to plaintiff conveyed title to lot D to plaintiff, and that the deed should be reformed by striking therefrom the description by metes and bounds, which had been inserted by error and mistake. The court adjudged defendants to be the legal and equitable owners of fee-simple title to the other four lots claimed by plain-

tiff and title to such lots accordingly was quieted in defendants; that the warranty deed to plaintiff, recorded in the county clerk's office, should be construed as conveying only lot D to plaintiff, and ordered same reformed by eliminating and striking therefrom the description of the entire parcel of lots by metes and bounds.

The numerous assignments of error upon which plaintiff predicates her claim for reversal are presented under two propositions: Plaintiff first contends the trial court was without jurisdiction to reform plaintiff's deed, there being no pleadings by defendants upon which to base such reformation.

It is plaintiff's theory that she proved her title to the property by her warranty deed, validity and delivery of which was admitted by defendants. Plaintiff then urges that since defendants' answer did not plead their title, or that Ruby owned the property at his death, or facts showing their title or interest therein, and since defendants did not ask reformation of this deed, the trial court was without jurisdiction to reform same.

Plaintiff based her claim to title upon her warranty deed. Defendants' answer admitted execution of the deed, but admitting the validity thereof only so far as it conveyed title to plaintiff to lot D. At the trial all defendants' evidence was directed toward showing that the entire negotiations and agreement for sale and purchase of this property concerned only lot D. Their answer denied plaintiff's right or title to any property other than the one lot and admitted their possession of the property and sought to have their title quieted thereto.

One section of our statute, 12 O.S. 1941 §1143, dealing with actions for recovery of real property provides as follows:

"Answer in action to recover real property. — It shall be sufficient in such action, if the defendant in his answer, deny, generally, the title alleged in the petition, or that he withholds the possession, as the case may be, but if he deny the title of the plaintiff, possession by the defendant shall be taken as admitted. Where he does not defend for the whole premises, the answer shall describe the particular part of which defense is made. R. L. 1910, §4929."

The matter set forth in defendants' answer sufficiently complied with the statutory requirements to vest the trial court with jurisdiction to grant the relief required under the pleadings and evidence in this case. It is a fundamental rule that where equity once attaches it does so for all purposes and has the duty and power to determine all rights and claims of the parties relating to the subject matter, and to enter such decree as will finally determine all the rights of the parties. Franklin v. Margay Oil Corp., 194 Okla. 519, 153 P. 2d 486. And this is true regardless whether such questions are specifically raised by the pleadings. Jackson v. Jackson, 196 Okla. 580, 167 P. 2d 51.

It is next urged that the trial court erred in reforming plaintiff's deed in the absence of pleading and proof by defendants that this deed was the result of fraud or mutual mistake. Supporting such argument plaintiff relies upon cases holding that where by answer defendants fail to allege fraud or mistake in execution of a deed, no defense is stated to an action by the grantee under such deed to quiet title. Bell v. Bancroft, 55 Okla. 306, 155 P. 594.

Plaintiff introduced no evidence other than her deed. All of defendants' evidence was directed toward showing that the negotiations leading up to plaintiff's purchase, and the understanding of the completed transaction, was that she intended to buy, and did not buy, any property other than lot D. The evidence in this connection was sufficiently clear and convincing to establish that the parties considered that only lot D was involved.

No question was raised by either party for nearly six years following the date of plaintiff's deed. Ruby continued to exercise all his rights of ownership over the other four lots, and plaintiff never attempted to exert any dominion over the property, nor saw fit to assert any claim of ownership. Evidently both parties considered the plaintiff's deed as conveying title to lot D only. In such cases it is competent to show the conduct, declarations and statements of the parties before and at time of execution of the deed. Oklahoma City Fed. S. & L. Assn v. Clifton, 183 Okla. 74, 80 P. 2d 283. All of the facts and circumstances definitely established that the deed erroneously recited the description of an entire subdivision by metes and bounds, although the agreement and understanding of the parties clearly was that plaintiff was purchasing only the one lot, which she went into possession of and occupied thereafter.

We are of the opinion and hold that where the evidence of a mutual mistake in the description of land conveyed by deed is clear, unequivocal and convincing, and the defendants generally deny the allegations of plaintiff's petition and further seek to have their title quieted as to the portion of the property erroneously included in the description contained in the deed, a court of equity has the power to correct such mistake and reform the deed to reflect the true intention of the parties, though no special allegation of fraud or mistake is pleaded as grounds therefor by defendants. See Rochelle v. Anderson et al., 113 Okla. 137, 243 P. 528.

Judgment affirmed.

