## WRIGHT et al. v. FENSTERMACHER.
### No. 35878.

Supreme Court of Oklahoma.

Feb. 9, 1954.

Rehearing Denied March 2, 1954.

Application for Leave to File Second Petition for Rehearing Denied May 25, 1954.

Memminger & Cook, by C. B. Memminger, Atoka, Jack Connell, Wichita Falls, Tex., for plaintiffs in error.

Paul & Montgomery, Durant, for defendant in error.

O'NEAL, Justice.

This case presents the question of whether the decree cancelling an assignment of oil and gas lease and certain contracts for the development and operation of the lease should be affirmed upon equitable grounds.

C. R. Fenstermacher was plaintiff below and Doyle Wright and Gervise Ford and F. W. Lamb, doing business as Lamb-Ford Drilling Company, and individually, were defendants below, and will be hereinafter referred to in that position.

The trial court found the issues generally in favor of the plaintiff, and against all named defendants. The decree recites that the oil and gas lease dated October 28, 1947, executed by Mattie Belle Vaughan and her husband, Hal H. Vaughan, covering sixty acres of land in Atoka County, Oklahoma should be quieted in the plaintiff.

The decree further recites that the contract dated October 25, 1950, between the plaintiff and the defendant, Doyle Wright, and the contract dated July 3, 1951, between the defendant, Doyle Wright and his co-defendants Gervise Ford and F. W.

Lamb, doing business as Lamb-Ford Drilling Company, under which contracts defendants assume certain obligations for the development and operation of the lease should be canceled.

Defendants here assert that the decree is not sustained by the evidence, and therefore the judgment below should be vacated. By pleadings, as well as by stipulations, the following facts are disclosed: That on the 28th day of October, 1947, Mattie and Hal Vaughan executed an oil and gas lease upon the described sixty acres of land situated in Atoka County, Oklahoma to the plaintiff C. R. Fenstermacher. The lease ran for a term of ten years. The consideration recited was the payment by the lessee of the sum of $600 yearly for the first five years, said payment being in lieu of royalties for all oil or gas produced from the lease premises; that after the expiration of the first five-year period the usual one-eighth royalty in the production of oil or gas was to be paid to the lessors. The lease further provided that it would terminate as to both parties if said sum of $600 was not paid yearly on the dates designated in the lease. Other provisions of the lease need not be referred to ·here for the proper disposition of the case.

On October 25, 1950, the plaintiff made an assignment of an undivided one-half interest in said oil and gas lease to the defendant, Doyle Wright. The assignment recites that there are now three non-producing oil wells on the land covered by the lease, which wells should be cleaned out and equipped in order to produce oil. The assignee, Doyle Wright, agreed to and did pay a cash payment of $300 as part consideration for the assignment of the lease, said payment representing one-half of the yearly rental due for the year commencing November 1, 1950. The assignee agreed to clean out the three wells, equip them with power, jacks, leads, lines, and furnish a storage tank; all of said equipment, as well as the labor to be performed upon the lease, was to be paid for by the assignee and it was provided that he should keep the lease free of liens or encumbrances; all the equipment then upon the lease, as well as the equipment to be furnished in the

future by the assignee, was to be owned jointly between Fenstermacher and Doyle Wright. The operating costs and future development was to be borne equally, and the property thereafter to be operated jointly.

On July 3, 1951, Doyle Wright assigned to Gervise Ford and F. W. Lamb, doing business as Lamb-Ford Drilling Company, one-half of his interest in his contract with Fenstermacher, under which Lamb-Ford was to reimburse Wright for one-half of the money he had expended and assumed one-half of the duties, burdens and obligations of Wright's contract with Fenstermacher. Fenstermacher agreed and consented to the assignment between Wright and Lamb-Ford.

On July 5, 1951, Fenstermacher, the then owner of an undivided one-half interest, Doyle Wright, the owner of a one-fourth interest and Ford and Lamb, the owners of a one-fourth interest in the oil and gas lease, entered into a contract which recites that Doyle Wright was appointed as the operator of said properties. As the operator he agreed to furnish the non-operating parties monthly statements of costs and expenses incurred, and for such advancement was given a lien on the non-operating parties' interest, both in the oil and gas lease, as well as production from the wells thereon. Under this agreement Ford and Lamb, who were doing business under the name of Lamb-Ford Drilling Company, agreed to pay Doyle Wright one-half of the money expended by Wright under the contract of October 25, 1950, between Fenstermacher and Wright, and further agreed to assume and perform the obligations under said contract.

Additional evidence was introduced by the respective parties. We find evidence in the record which discloses that the defendant Wright did not perform any work upon the wells until the latter part of the month of June, 1951. Wright had attempted to pump the wells, using the old equipment then in place. The pump so employed would not lift the oil into the storage tanks. From October, 1950, to the date of the trial in September, 1952, defendants had only produced thirty-eight barrels of oil from

the wells, which was then in storage. Proof also discloses that the defendants failed and neglected to pay one-half of the lease rentals to the plaintiff under the terms of the agreement, and further that they failed to furnish plaintiff with monthly costs and expense statements as provided for in said agreement.

It is further shown that the defendants obtained oil well equipment from a Mr. Henry, which was lost in one of the wells, and that Mr. Henry made a claim for the value of said equipment in the sum of $545, which claim remained unpaid and became a potential lien against the lease property. Further, that the defendants failed to pay the wages of the pumper upon the lease. The pumper, who was employed by the defendant Wright, testified that in July, 1951, the defendants attempted to clean out the wells, but that the pumping equipment then in use was old and worn out, and it could not lift the oil into the tanks. After the present action was filed and summons had been served upon the defendants in the month of November, 1951, they did install some new pumping equipment on the wells and a small quantity of oil was lifted into the tanks, but soon thereafter additional trouble developed in the old equipment and the wells were again shut down. The pumper testified that the defendants, Wright and Ford, at the time they installed the new barrels and valves removed twenty-three joints of pipe eighteen to twenty-two feet long from the lease and it had not been returned to the lease.

We have frequently held that equity may decree the cancellation of an oil and gas lease or contracts based thereon, where such cancellation will effectuate justice.

We must indulge the presumption that the contracting parties assumed that if the wells were cleaned out and proper pumping equipment installed, that the wells would produce oil in sufficient quantities to realize a profit over and above the investment made and the operating costs incurred under their contracts. The failure here, as the trial court found, was occasioned by defendants noncompliance with the terms of their contracts.

We find no evidence nor intimation that the wells were incapable of producing oil if properly cleaned out and equipped as contemplated under the contracts. Moreover, we have seen the lessees were required during the first five-year period of the lease to make an annual payment of $600 which stood in lieu of any other royalty payment; therefore, the value of the lease depended entirely upon production in excess of said cash payments.

We are of the view that the trial court's general finding embraces a finding that the defendants totally failed to perform their contract obligations, and that therefore the contracts were subject to rescission and cancellation.

In Davis v. Hastings, Okl., 261 P.2d 193, we said:

"Rescission or cancellation of a contract may be ordered where that which was undertaken to be performed in the future was so essential a part of the bargain that the failure of it must be considered as destroying or vitiating the entire consideration of the contract, or so indispensable a part of what the parties intended that the contract would not have been made with that condition omitted."

And in Hurst v. Champion, 116 Okl. 228, 244 P. 419, we held:

"The true rule appears to be that rescission or cancellation may properly be ordered, where that which was undertaken to be performed in the future was so essential a part of the bargain that the failure of it must be considered as destroying or vitiating the entire consideration of the contract, or so indispensable a part of what the parties intended that the contract would not have been made with that condition omitted."

The judgment quieting plaintiff's title against all defendants in and to the oil and gas lease insofar as it covered the NE ¼ of the NE¼ and the E½ of the NW¼ of the NE¼ of Section 9, Township 1 South, Range 14 East, in Atoka County, Oklahoma, and the judgment cancelling the contracts of October 25, 1950 and July 3,

1951, insofar as said contracts affect plaintiff's right, title or interest in the leasehold estate covering said land be cancelled, is affirmed and the judgment of the trial court denying the defendants any relief on their cross-petition is also affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, WILLIAMS, and BLACKBIRD, JJ., concur.