Alice M. COLLINS, Plaintiff in Error,

v.

D. D. BALDWIN et al., Defendants in Error.

No. 40866.

Supreme Court of Oklahoma.

March 23, 1965.

Rehearing Denied June 1, 1965.

Application for Leave to File Second Petition for Rehearing Denied Aug. 3, 1965.

John B. Ogden, Oklahoma City, and Busby, Stanfield & Orton, by Orel Busby, Ada, for plaintiff in error.

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

This appeal involves two contracts pertaining to the Hacienda Holiday Motel, located at 3000 North Lincoln Boulevard, Oklahoma City. Both were entered into in January, 1959, by Alice M. Collins, plaintiff in error and owner of the lots comprising the motel's site. The first one was for the motel's construction on the lots and will hereinafter be referred to as Contract 1. The other party executing it was D. D. Baldwin, defendant in error, acting for Baldwin Construction Company, as contractor and builder. Mrs. Collins entered into the other contract, hereinafter referred to as Contract 2, with D. D. Baldwin, as an individual.

The cash consideration prescribed in Contract 1 for Mrs. Collins to pay Baldwin Construction Company for constructing the motel was $83,000.00, but, by Contract 2, she promised to sell D. D. Baldwin a one-fourth interest in the motel for $25,000.00. According to Contract 2, when Mrs. Collins had paid Baldwin Construction Company $73,000.00, she would be credited with the outstanding balance of $10,000.00 remaining due on the Contract 1 consideration of $83,000.00, and she, in turn, would credit Baldwin for that $10,000.00 on his interest's purchase price of $25,000.00.

Contract 2 further provided in detail how the 15-thousand-dollar balance, due on the agreed purchase price of Baldwin's one-fourth interest, was to be paid out of the profits of the motel business, how Mrs. Collins was to be reimbursed for her investment also out of those profits, and further provided that she was to have the exclusive management and control of operat-

ing the motel, without salary, until the full purchase price of Baldwin's interest was thus paid for; and that when this finally occurred, he would be entitled to a recordable conveyance evidencing his interest. Contract 2 further provided that during this "paying out" period, Mrs. Collins was to keep "adequate records and books to reflect the total income and disbursements" from her operation of the motel, that she should "well and truly account" for same, and that she should furnish Baldwin a statement, each month, as to the motel's operation. The contract also gave Baldwin the right to examine the motel's books and records at any time he desired.

After Baldwin Construction Company undertook performance of Contract 1, it was the first week in August, 1959, before portions of the motel had reached sufficient stages of completion that they could be turned over to Mrs. Collins and she could begin furnishing them and renting rooms to motel customers. Since that time, Mrs. Collins had operated the motel without any apparent recognition of D. D. Baldwin's potential, or actual, rights or interest therein until compelled to do so in the present litigation, which commenced in the Spring of 1960. The motel's business had not proved as profitable, and as capable of defraying its financial obligations, as apparently was anticipated when Contracts 1 and 2 were entered into; and it appears probable that Mrs. Collins supplemented her original investment therein by additional contributions of personal funds to meet operating expenses.

The subject controversy between the parties progressed through the lower court in substantially the following manner. Mrs. Collins first invoked the court's jurisdiction by filing Cause No. 149528. Therein, she named both D. D. Baldwin and his architect father, M. B. Baldwin, as defendants, both individually, and as comprising Baldwin Construction Company.

In her pleadings, Mrs. Collins, hereinafter referred to by name or as plaintiff, al-

leged, among others, the following material breaches of Contract 1 by the builder:

(b) Breach of said contract in the construction of the motel's roof, resulting in damages amounting to $5,000.00;

(c) Breach of said contract in failing to provide proper drainage for the south 300 feet of the motel's east wall and foundation, which Mrs. Collins was compelled to expend $1400.00 to correct, plus damages in the sum of more than $5,000.00 to furnishings and carpeting, and from loss of income due to water seepage;

(d) Breach of said contract in failing to install the kind of air conditioning and heating prescribed in the contract, to plaintiff's damage in the sum of $6,000.00, plus damages of another $8,000.00 through loss of business profits because of uninhabitable conditions thereby created in certain of the motel's rooms or units;

(e) Breach of the contract in the use of inferior and unsuitable material in the subflooring of the second story units, to plaintiff's damage in the sum of $5,000.00.

In their pleadings, the Baldwins, hereinafter referred to by name, or as defendants, denied all of plaintiff's allegations as to the improper construction of the motel, and alleged, in substance, that any variations between the construction of the motel and Contract 1, were cured and/or ratified by accepting and going into possession of the motel, thus effecting a waiver on the part of the plaintiff. They further alleged, on information and belief, that profits from said motel had been, or with proper management, should have been, sufficient to entitle D. D. Baldwin to a conveyance of his 25% interest therein; that plaintiff, contrary to the provisions of said contract, had withdrawn the sum of $150.00 per month from the motel's proceeds for her own use and benefit, since, and including, September, 1959; that plaintiff had breached the provisions of Contract 2 by refusing defendant, D. D. Baldwin, his right to personally inspect the motel's books and records, and refusing to furnish him monthly statements as to the motel's operations, and

excluding him from all knowledge as to the business's earnings and operations. Defendant, D. D. Baldwin, further alleged, on information and belief, that plaintiff had failed and refused to keep accurate books and accounts on said motel, thereby making it impossible to determine its earnings and expenses, and that such neglect would continue unless a receiver was appointed to take charge of, and operate, the motel for the benefit of both interested parties.

Defendants prayed, among other things, that plaintiff recover nothing, and that she be required to convey a 25% interest in the motel to defendant D. D. Baldwin, or, in lieu thereof, that the court order the sheriff to execute such a conveyance. They further prayed that plaintiff be required to account to defendant, D. D. Baldwin as to the operation of the motel, and that a receiver be appointed to hold and manage it under the orders and direction of the court.

After a protracted trial, at which three volumes containing more than a thousand pages of testimony was elicited, and a volume of documentary evidence was introduced, the court entered judgment finding, among other things, that M. B. Baldwin was never a partner of D. D. Baldwin in any entity with which plaintiff had contractual relations; and refused to enter any judgment against him. The court further found that D. D. Baldwin, to whom it referred as the sole defendant in the case, *substantially performed* Contract 1, but failed to meet certain of its specifications, to plaintiff's damage, as indicated by items set forth in the judgment as follows:

| | |
|---|---:|
| "Repair of swimming pool | $1,800.00 |
| "Baseboard heating | 3,100.00 |
| "Replacement cost of air conditioners | 7,444.00 |
| "Cost of air conditioners—less salvage | 3,484.50 |
| TOTAL | $15,484.50" |

Judgment was rendered in favor of plaintiff in the total sum of damages above indicated, and she was further found to be entitled to credit upon defendant's contribution to the partnership in that amount; but she was denied rescission of Contract 2 upon a finding that defendant's failure to perform Contract 1, supra, in the respects above indicated did not destroy the object of the parties' association and agreement so as to entitle plaintiff to a rescission of Contract 2, supra.

The court further found that plaintiff had breached Contract 2, supra, in the following particulars;

"(a) * * * failed to keep and maintain any records from which the court may properly determine the receipts, expenditures and the extent of the defendants' present capital contribution to the motel partnership, * * *

"(b) * * * drew monies from the motel business for her own use, * * *

"(c) * * * refused defendant any access to partnership books and records, * * *

"(d) * * * failed to render the defendant a monthly operating statement of the motel business, * * *."

The court further found that plaintiff's *nonperformance of the contract in the* above respects prevented the court from being able to determine the credits plaintiff should have made to the capital contribution account of defendant, and therefore, that it was then impossible to determine the extent of defendant's pecuniary interest in the motel partnership.

The court further found that the parties' partnership should be dissolved under Tit. 54 O.S.1961, § 232(c) and (d); that the

motel partnership should be placed under receivership and that, upon his appointment a receiver should manage the property until the extent of defendant's capital contribution to the partnership could be determined. After finding that final disposition of defendant's plea for an accounting should be made when feasible, from books and records to be compiled by the receiver, the judgment set the case for further hearing on the appointment of a receiver and ordered the case to be continued, after such receiver's appointment, until such time as he has operated the motel a sufficient length of time to ascertain the income from its operation, and determine D. D. Baldwin's capital contribution, " * * * at which time the partnership shall be dissolved, the motel sold and accounting made, * * * ". The money judgment awarded plaintiff for $15,828.50 was decreed to be a lien upon the interest of the defendant D. D. Baldwin in the motel property.

After the overruling of plaintiff's motion for a new trial, she lodged the present appeal.

Her argument for reversal is presented under two propositions, the second being that the court failed to award her damages for certain items she refers to as "defects in construction." Under this proposition she cites evidence concerning the sagging of a portion of the motel's roof, the seeping of water into certain of its rooms, attributed to "faulty plumbing", and to water, which leaked into certain portions of the building from outside, and to evidence of the damages she suffered therefrom. She claims the trial court refused to take these items of damage, which she says total $5077.87, into consideration in rendering its judgment. She also represents, among other things, that "there was no dispute" as to the causes of these damages.

From our examination of the record, this latter statement appears to be true, but we do not agree that there was no conflict in the evidence as to which (if either) of the parties, *was responsible* for such causes of the damages referred to.

There is no question but that, when the motel was completed, a part of its roof sagged. Testimony by defendant's witness, contractor Carl Staas, that "structurally" this sagging "hasn't bothered" the roof, was not disputed; nor was his opinion, that it would cost $250.00 to rectify the roof's "waived appearance", directly contradicted. Plaintiff attempted to show that the sagging was due to the failure of the builder to construct it in a workmanlike manner and/or according to the specifications. According to the evidence, the sagging was caused in the manner hereinafter related.

Among the specifications attached to Contract 1 was the following: "(1) Brick veneer to be first grade $35.00 per thousand red brick laid up in even courses with mortar joints not less than $\frac{3}{8}$" thick. * * * " It appears that, after the composition shingles had been ordered for the roof, defendant was unable to procure the type of brick described in the quoted specification; and so notified plaintiff. It was then arranged that M. B. Baldwin would have brought to his office from the supplier, Fox Brick & Stone Company, samples of other brick from which a substitute for the specified brick could be selected. When this was done, and the brick company had delivered a sufficient quantity of the substitute brick to the motel site to do the job, Mrs. Collins claimed that it was not the same brick as that selected from the samples in Mr. Baldwin's office; and refused to allow it to be used. From a letter defendant addressed to plaintiff concerning the brick controversy, it appears that it probably began in early May, 1959, and, according to defendant, continued for about two weeks. Defendant also testified that, at this time, the rolls of composition shingles to cover the thin wooden-sheeted roof had been delivered and placed up on the roof, but that their use had to await facing of the parapet walls (extending up through the roof) with the same kind of brick that was to be used on the motel's front walls. Defendant's testimony was that the delay in the completion of the roof (caused by

plaintiff's claimed unjustified rejection of the substitute brick) while those heavy rolls of roofing material lay on the roof, caused the sagging. Plaintiff denied that this controversy caused a delay in the progress of the construction; but the evidence joined an issue of fact for the trial court to determine. Such court's judgment in a case of this kind must be deemed to include such findings as are consistent therewith and that might, on the basis of adequate evidence, have been made to support it. Plaintiff has not demonstrated that the trial court's apparent conclusion that defendant was not responsible for the roof's sagging is either contrary to law and/or clearly against the weight of the evidence. In view of these considerations, we hold that her arguments in regard to this feature of the case constitute no ground for reversal.

■ The evidence of the respective parties is also in conflict as to who was to blame for the damages to the motel from water. A plumbing bill of $324.22, for whose payment plaintiff sought reimbursement as one of the items of water damages, was attributed, in defendant's testimony, to a "pipe coming off upstairs" (although, in view of other evidence, a part of this total may have been incurred for plumbing work done, and equipment installed, in connection with other plumbing repairs, such as one affecting the motel's hot water supply). The only incident to which the quoted testimony could have any comprehensible reference was described in the testimony of the plumber, H. L. Maguire, as leakage from a pipe supplying cold water to a lavatory in one of the motel's upstairs rooms. This did not occur until January, 1962, after the motel had been in operation more than two years. While Maguire, at first, expressed the opinion that too short a pipe was used for this purpose when the lavatory was (initially) installed, on cross examination he admitted that he had no idea what caused this leak. We have carefully examined all of the evidence concerning this matter, and, on the basis thereof, cannot say that the trial court erred in not allowing plaintiff any recovery on account thereof.

■ There is no question but that, after the motel's completion, rainwater or surface water came into some of its rooms from outside the building and caused damages to the carpeting (and perhaps other things therein) and rendered them unsuitable, at varying periods, for occupancy. The only specific total of claimed damages which, in plaintiff's brief, the trial court is represented as having refused to consider, is "$5077.87", which, after deducting the $324.22 plumbing item, above referred to, leaves a total of "$4753.65", which is "broken down" into the following items mentioned in plaintiff's brief: $2080.00 (characterized therein as "cost of carpeting alone"), and $2673.65 for "water proofing" (of the building), that plaintiff argues she was "forced to pay out in order to attempt to stop the water flooding." To understand the controversy about the damages from such water coming into the motel from outside its walls, a brief factual background is necessary.

Before commencement of the motel's construction, the surface of the lots, comprising its planned site, had an elevation at their back, or eastern, side that was much higher than their front, or western, side, facing Lincoln Boulevard. At its highest point, the site's eastern boundary was as much as 12 feet higher than said street. As the plans for the motel required the eastern wall to be built only 12 inches west of the lot's eastern boundary, with only a gradual slant in the paved automobile-parking area and driveway in front of the motel, and extending to the Lincoln Boulevard curb line, it was necessary to excavate as much as 6 or 7 feet below the surface of the east side of the lots to lay the concrete footing and/or foundation on which the motel was constructed. This resulted in its ground floor being several feet below the surface of the ground east of it along the lots' eastern boundary, and made the motel's eastern wall similar to a retaining wall, in that most of its masonry was below that

adjacent ground level; and, between said surface and the ceiling of the motel's first story, there was little more than enough room for the air conditioners that were installed in holes left therefor in each room's east wall, with about half of the thickness of the conditioners protruding outside the wall. The fact that the surface of this ground east of the air conditioners was in some places higher than the bottom edge of these air conditioner holes in the motel's east wall created a problem which appears, from the evidence, to have been recognized by the builder during the motel's planning stages. According to the evidence introduced on his behalf, it was satisfactorily solved by modification of the structure's plans and changing the "grade" along its east wall, so that surface water, which might otherwise have drained toward that wall, was diverted both to the north and to the south, and would drain toward the streets on either side of the motel. There is no question from the evidence but that within a few weeks after plaintiff went into possession of, and started operating, the motel, she caused changes to be made in the "grade", or surface of the ground immediately east of the motel's eastern wall, which defendant's evidence tended to show permitted surface water to seep into that wall, at the level of its air conditioner openings. There was also evidence· tending to show that this water seeped out of the wall onto the floors of some of the rooms about baseboard level, and/or higher. Some of plaintiff's evidence, in effect, conceded that this could have accounted for some, or all, of the damages plaintiff claimed to the carpeting of said rooms from surface water, as aforesaid. Here, again, a question of fact was presented. We think that, on the basis of the evidence the trial court would have been warranted in finding that the leakage of the surface water into these rooms was due to none of the claimed defects in the motel's construction, but rather to plaintiff's change, after the motel's completion (and as already indicated) of

the drainage pattern that had previously been arranged by M. B. and/or D. D. Baldwin, acting for the defendant construction company. Accordingly, applying the same rules hereinbefore referred to in support of the trial court's judgment, we hold that plaintiff's arguments demonstrate no cause· for reversal in the fact that said judgment provides her with no recovery for the damages therein referred to from surface water coming into the motel from outside its walls, or for the "water proofing" measures she employed as a way of preventing further such damages.

 Under plaintiff's "Proposition One", she attacks the trial court's finding that defendant substantially complied with Contract 1. Her argument proceeds from the undisputed hypothesis that Contracts 1 and 2 were so interrelated, and so much a part and parcel of one and the same total arrangement between the parties, or parts of the same transaction, that defendant's rights under Contract 2 to the proportionate interest therein prescribed for him in the motel, were dependent upon his compliance with Contract 1. It seems to be her contention that as defendant failed in the respects found by the trial court, and other claimed ones, to discharge his obligations under Contract 1, said court should have granted her a rescission of Contract 2. There is the inference all through her arguments that said court's finding of defendant's substantial compliance with Contract 1, while, at the same time, awarding her judgment in the sum of $15,828.50 on account of his breaches of it, renders the judgment self-contradictory. In support of her position that the trial court should have determined, in effect, that defendant forfeited his Contract· 2 rights because he failed to discharge certain of his Contract 1 obligations, plaintiff urges that a proper judgment would have produced such result, if there had been correctly applied to this case the rule referred to in authorities she cites, such as Wright v. Fenstermacher, Okl., 270 P.2d 625, and Davis v. Hastings,

Okl., 261 P.2d 193. It would appear that under this rule, the trial court could have cancelled Contract 2 if the respects in which defendant failed to perform Contract 1 "must be considered as destroying or vitiating the entire consideration" of Contract 2. In other words, if defendant's unperformed obligations under Contract 1 were of such character as to constitute an indispensible part of plaintiff's consideration for entering into Contract 2, then the trial court should have cancelled the latter contract. Conversely, if defendant's breaches of Contract 1 were not of such character, then it would appear that under the doctrine of "substantial compliance", he should (as the trial court held) retain his rights under Contract 2. The rule, under whose proper application to this case defendant contends the trial court's judgment should be affirmed, is discussed in Kizziar v. Dollar (10th Cir.) 268 F.2d 914, in which, among other things, it was said:

"* * * The law is settled in Oklahoma that when a contractor and builder has in good faith endeavored to comply with the terms of a contract, literal compliance in all details is not essential to recovery, especially where the owner has taken possession of the building. In Robinson v. Beaty, 75 Okl. 69, 181 P. 941, 942, the Oklahoma Supreme Court said:

" 'Since the rule of exact or literal performance has been relaxed, literal compliance with a building contract is not *essential to a recovery thereon, but a performance thereof in all its material and substantial particulars is sufficient.*'

"There is substantial performance when the builder has in good faith intended to perform his part of the contract and has done so in the sense that the building is substantially what is provided for, and there are no omissions or deviations from the general plan which cannot be remedied without difficulty. * * *" (Emphasis ours).

In Bushboom v. Smith, 199 Okl. 688, 191 P.2d 198, we said:

"* * * In such case the judgment should make such monetary award to the injured party as would place him in the position he would have been had the contract been performed, but it should not put him in a better position then he would have been had there been complete performance."

In its application of the rule here dealt with, the court, in Kizziar v. Dollar, supra, appears to have considered significant the fact that the building involved was constructed for use as a medical clinic and that it had been successfully so used for a considerable period. Likewise, we think that in this case it is significant that the defects complained of by plaintiff in the building involved have apparently constituted no insurmountable, or even substantial, obstacle to her acceptance and use of it for the purpose for which it was constructed and intended. In her argument, plaintiff does not directly question the good faith of the builder in his efforts to comply with Contract 1, except to charge him with ignoring his duty to build the motel in a "workmanlike" manner, and of being guilty of unspecified "unscrupulous acts." From our examination of the record it is our opinion that the builder's good faith in such endeavor can not be successfully challenged. In view of this state of the record, and, as none of the defects have prevented the premises from being operated as a motel, and it has been so operated with some degree of success, we think the requirements of the above rule have been met and that the prerequisites for the operation and efficacy of Contract 2 came into being. In other words, while the subject motel's business may have been hurt, or damaged, to some extent by such things as a defective filter system in its swimming pool, the failure of its air conditioners to both heat and cool its rooms satisfactorily, a squeaking floor in an upstairs room, and/or by some claimed de-

fects in construction, for which the trial court awarded plaintiff no damages, none of such defects were of such a serious character as to prevent, or drastically curtail, its use in accord with the objects and purposes of Contract 2, nor have they kept defendant from enjoying the benefits contemplated therein. To cancel that contract and allow her to appropriate to her own exclusive advantage the benefits derived from defendant's work and investment in his performance of Contract 1, to the substantial extent to which it was performed, would result in her exclusive ownership of a business property, which the evidence seems to indicate was worth considerably more when its operation was begun than the consideration she gave for it; and, contrary to the above quoted admonition in Bushboom v. Smith, supra, would put her in a better position now than she would have occupied had plaintiff completely performed all of his obligations "to the letter" of Contract 1. Nor do we think that, in view of the facts of this case, plaintiff is now in a position to successfully contend that any provisions of Contract 1 properly exclude this case from application of the "substantial compliance" rule.

Plaintiff's brief does not cite, in either of her arguments for reversal, evidence that the motel was completed only after the surety on defendant's performance bond was called upon to discharge its duties under said bond. Therefore, such evidence is disregarded in this opinion. Nor does she specify any reason that the trial court should not have ordered a receivership for the property, other than those indirectly involved in the arguments herein dealt with.

As plaintiff has failed to demonstrate that the findings and judgment of the trial court are contrary to law or clearly against the weight of the evidence in the respects charged, said judgment is hereby affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.