Audra EASTERLING, Appellee,

v.

Elenor FERRIS; Elenor Ferris, Personal Representative of the Estate of Scott Spear Ferris, Deceased; Barbara Diane Gilliam, nee Ferris; The Unknown Successors and Assigns of Scott Spear Ferris, Deceased; The Unknown Successors and Assigns of Walter Easterling, Deceased; The State of Oklahoma ex rel. The Oklahoma Tax Commission, Appellants.

No. 56173.

Supreme Court of Oklahoma.

Sept. 14, 1982.

Tom Shaw, Tishomingo, for appellee.

Carson, Rayburn & Hirsch by Karen A. Pepper Mueller, Oklahoma City, for appellants.

DOOLIN, Justice:

## FACTS

On or about March 5, 1974, plaintiff below/Appellee, Audra Easterling (hereinafter designated "Grantor") and her now deceased husband, Walter Easterling, entered into an oral contract with Grantor's brother, Scott Spear Ferris, now also deceased, to convey approximately 4.85 acres in Johnston County in consideration of a note in the principal amount of $30,000.00 at an interest rate of 6% per annum. Payments on the note in the amount of $500.00 plus interest were to commence on September 1, 1974 and continue every six months thereafter until the purchase price was fully paid. A General Warranty Deed was executed and delivered on that date. The deed expressly reserved a life estate in the Grantor and her spouse.

On July 9, 1974, the Grantee executed an unsecured promissory note for the purchase price. The note was a standard printed form, but all provisions were deleted except the bare promise to pay, the amount and due date of the installments and the annual interest rate. The deed was filed of record at that time. An initial payment on the note was made on September 4, 1974. No other payments were made.

On January 10, 1978 Walter Easterling died intestate. Grantor was his sole heir. On December 3, 1979 Grantee also died, survived by Defendants below/Appellants Elenor Ferris (Grantee's spouse) and Barbara Diane Gilliam nee Ferris (Grantee's daughter) who will be designated hereinafter as "Successors."

Approximately ten months later, Grantor brought suit for cancellation of the deed and to quiet of title in her to the property in question. Grantor pleaded two alternative theories for cancellation of the deed:

(1) Rescission by means of an oral agreement between Grantor, her spouse and Grantee entered in November 1977; or

(2) Failure of consideration:

Suit was not brought on the note. The parties were in agreement regarding the facts surrounding the transfer of the property and the failure of Grantee to pay on the note after the initial payment of $500.00 on September 4, 1974. The facts surrounding the alleged rescission were in dispute. The trial court found for Grantor. He presented the following rationale for his decision at the conclusion of the nonjury trial:

"... Ferris. He did not pay the note. There seems to be no doubt about that at all ... I don't think it's natural that—he would expect to own the property and not pay for it in all those years ... Certainly, Audra Easterling and her husband didn't intend to give the property to him. They wouldn't have taken a note for it if they intended to give it to him ...

"It would not be just that Mr. Ferris should keep the property and it would not be just that his heirs would take it from Mrs. Easterling.

"... I do seriously doubt if the law will permit a cancellation of a deed for failure of consideration ... But I do think that the evidence is here as such as to create a trust by operation of law.

"I'll—I'll go further and think that—that the law should construct a trust on the grounds of fraud even although not alleged. Now, Mr. Ferris is not here and I don't mean to say that he intended to defraud his sister but if he intended to keep the property and not to pay for it and to deny her of her property, that would be a fraud. And I think the law will not permit it. Therefore, the judgment will—will be in favor of the Plaintiff."

Some months later a journal entry of judgment was entered reciting that Grantor had sustained by a preponderance of the evidence all of the material allegations in her petition and finding in favor of Grantor on all issues of law and fact. The deed was cancelled and title quieted in Grantor.

Grantee's successors appealed, asserting error in:

(1) The admission of certain evidence including certain statements alleged to have been made by the deceased Grantee.

(2) Judgment for Grantor, not on either ground for relief asserted by Grantor, but on the basis of fraud which was not pleaded or proven.

The Court of Appeals reversed and remanded with instructions to reinstate the deed and mortgage (note: there was no mortgage instrument to reinstate.) The appellate judge based his decision on the lack of pleading and proof of fraud and held that the judgment of trial court was against the clear weight of evidence and law. The appellate court did not consider Grantor's two asserted grounds for cancellation of the deed, (1) recision and (2) failure of consideration.

The issues to be considered on this appeal are:

(1) Whether the trial court erred in imposing a constructive trust on the property in question and cancelling the deed on the basis of fraud, actual or constructive?

(2) Whether an executed, delivered and recorded deed can be rescinded by oral agreement?

(3) Whether an executed, delivered and recorded deed can be cancelled for failure of consideration?

## I. THE CONSTRUCTIVE TRUST

The trial court imposed a constructive trust on the property in dispute, justifying its decision not on actual fraud by the Grantee, but apparently on an unjust enrichment or constructive fraud theory:

" . . . Audra Easterling and her husband didn't intend to give the property to (Grantee) . . . It would not be just that (Grantee) keep the property and it would not be just that his heirs would take it from Mrs. Easterling . . . The law should construct a trust on the grounds of fraud, even though not alleged . . . I don't mean to say that (Grantee) intended to defraud his sister but if he intended to keep the property and not to pay for it

and to deny her of her property, that would be a fraud."

Grantee's successors argue that the trial court improperly entered judgment on a ground not pleaded and proven by Grantor.

Cancellation of a deed is a matter of equitable cognizance. 12A C.J.S. *Cancellation of Instruments,* § 28 (1980). Equity, having once attached in a proper proceeding, will administer complete relief on all questions properly raised by the evidence, regardless of whether such question or issues are specifically raised by the pleadings. *Wright v. Fenstermacher,* 270 P.2d 625 (Okl.1954). See also *Welch v. Ruby,* 200 Okl. 586, 198 P.2d 432 (1948); *Lackey v. Quigley,* 181 Okl. 492, 74 P.2d 927 (1937); *Levy v. S. H. Kress & Co.,* 285 F. 836 (Okl.1930).

The question remains whether the evidence is sufficient to justify the imposition of a constructive trust. After a careful consideration of the record, we hold that it does not.

The primary reason for imposing a constructive trust is to avoid unjust enrichment. It is imposed against one who "by fraud, actual or constructive, by devices or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." *Cacy v. Cacy,* 619 P.2d 200 (Okl.1980). See also *Haskell Lemon Const. Co. v. Independent School District Number 12 of Edmond,* 589 P.2d 677 (Okl. 1979); *Marshall v. Amos,* 471 P.2d 896 (Okl. 1970). A careful reading of the cases in this jurisdiction, in which the imposition of a constructive trust was sought, reveals that an element of unfairness in allowing the legal title holder to retain the property is not sufficient to justify the imposition of a constructive trust. There must also be some active wrongdoing on the part of the person against whom recovery is sought (Grantee). Thus, a constructive trust was

imposed: on wrongfully appropriated funds which were to be divided among a decedent's heirs, *Peyton v. McCaslin,* 417 P.2d 316 (Okl.1966); on property acquired by conspiracy to depress the price on a guardianship sale, *Goldsby v. Juricek,* 403 P.2d 454 (Okl.1965); and diversion of funds arising through a joint venture, *Marshall v. Amos,* supra. A constructive trust was not imposed: on public property for failure to pay a materialman, *Haskell Lemon Const. Co. v. Independent School District Number 12 of Edmond,* supra; for breach of an oral promise to convey a half interest in certain property in consideration for services rendered, *Regal v. Riegel,* 463 P.2d 680 (Okl.1969) or for the devise of a family Bible in contravention of the family tradition of passing the Bible to the oldest son, *Matter of Estate of Burns,* 585 P.2d 1126 (Okl.App.1978).

■ Further, the evidence of wrongdoing must be clear, unequivocal and decisive beyond a reasonable doubt. *Cacy v. Cacy,* supra. A mere preponderance of the evidence is not sufficient to establish a constructive trust but it must be established by evidence which is clear, definite, unequivocal and satisfactory, or such as to leave but one conclusion, or as to leave no reasonable doubt as to the existence of the trust. *Perdue v. Hartman,* 408 P.2d 293 (Okl.1965). The rationale behind such a strict standard of proof is to protect the security of titles. *Regal v. Riegel,* supra.

■ Consideration of the record in light of the foregoing reveals that the imposition of a constructive trust in this case is not clear and convincing. The record fails to establish egregious conduct on the part of the Grantee. At most, the record established breach of an oral contract.

## II. RESCISSION BY MUTUAL AGREEMENT

■ One of Grantor's asserted grounds for cancellation of the deed was a mutual agreement to rescind allegedly entered into by Grantor and her spouse and Grantee more than three years after execution and delivery of the deed and more than two years after Grantee ceased paying the purchase price. This assertion was hotly disputed and the evidence presented by both parties is conflicting. Taking the evidence in the light most favorable to Grantor, she has, at most, established an oral promise by Grantee to reconvey at some time in the future in consideration of return of the one payment made on the purchase price (which was purportedly applied to a debt owed by Grantor's and Grantee's brother on Grantee's instructions.) This evidence is insufficient to establish rescission of the deed.

■ Title 15, § 233(4) of the Oklahoma Statutes (1981) provides that a contract may be rescinded by agreement of all parties to the contract. However, a duly executed deed passes title on delivery, and therefore a mere agreement to cancel a deed or rescind the contract is ineffective. 26 C.J.S. *Deeds* § 174 (1956). In *Howe v. Martin,* 23 Okl. 561, 102 P. 128 (1909) we stated:

> "The offer on the part of plaintiffs to return the deed and abstract to the defendants *did not reinvest defendants with title nor was it a rescission of the contract* on the part of plaintiffs, nor in itself constitute an offer to rescind." 102 P. at 129. (Emphasis added).

It is undisputed that Grantor and her spouse executed and delivered the deed which was recorded. The deed has remained in the possession of the Grantee and his successors from the date of delivery until the present. Nowhere in the record does it appear that Grantee executed and delivered a deed back to the Grantor. At most, the record may establish that the Grantee made an oral promise to reconvey at some future date. Therefore, there has been no effective rescission of the conveyance by agreement of the parties.

## III. FAILURE OF CONSIDERATION

■ Finally, Grantor asserts a total failure of consideration as grounds for cancellation of the deed. Like the two arguments previously considered, this too must fail. Title 15, O.S.1981, § 233(4) allows rescission of a contract for failure of consideration.

However, the nature of conveyances is such that rather different principles apply to the cancellation of a deed for failure of consideration than those which apply to a normal contract. The cancellation of a deed is an exertion of the most extraordinary power of a court of equity. The power ought not be exercised except in a clear and exceptional case, *Chapman v. Chapman,* 400 P.2d 831 (Okl.1965).

■ There are two very elementary principles of the law for conveyancing. The first is that the execution and delivery of a deed merges the contract, as well as any prior negotiations, into the deed.

■ A second principle is that deeds are generally effective to convey title even if not supported by consideration. 26 C.J.S. *Deeds* § 16 (1956). See also *Kilgore v. Parrott,* 197 Okl. 77, 168 P.2d 886 (1946). As a result, the generally recognized rule is that an otherwise valid deed will not be invalidated by reason of total or partial failure of consideration. 26 C.J.S. *Deeds* § 21 (1956). *Washington v. Morton,* 90 Okl. 142, 216 P. 457 (1923). *Evans v. Turney,* 177 Okl. 550, 61 P.2d 237 (1936). In *Washington v. Morton,* supra, we held:

> "Inadequacy of consideration, much less failure to pay the purchase price, is not sufficient to justify a court of equity in setting aside a deed regularly executed." *Washington v. Morton,* 216 P. 457, 459 (1923).

In *Douglass v. Douglass,* 199 Okl. 519, 188 P.2d 221 (1947), we upheld the trial court's refusal to cancel a deed simply because the vendee had refused to pay the purchase price. The rationale underlying these cases is the policy to uphold the security of titles. The cancellation of a deed for failure of consideration would have the effect of transforming the grant of a fee simple absolute into a defeasible fee.

■ The general rule, however, is not without exception. Rescission or cancellation of a deed may be ordered when that which was undertaken to be performed in the future was "so essentially a part of the bargain that the failure of it must be considered as destroying or vitiating the entire consideration of the contract or so indispensable a part of what the parties bargained for that the contract would not have been made without it." *Wright v. Fenstermacher,* supra. This exception is generally applied when the bargained for consideration cannot be reduced to monetary value, e.g. royalties based on the operation of an oil well as in *Wright v. Fenstermacher,* supra. Another common situation to which this exception applies is a promise by the Grantee to support the Grantor for life. *Ferrero v. Siel,* 397 P.2d 501 (Okl. 1964); *Myers v. Diehl,* 365 P.2d 717 (Okl. 1961); *Moffat v. Moffat,* 195 Okl. 498, 159 P.2d 531 (1945). Where a money judgment would give the Grantor the bargained for consideration, mere failure to pay the purchase price cannot be a ground for cancellation of the deed. *Douglass v.. Douglass,* 199 Okl. 519, 188 P.2d 221 (1947).

■ A second situation justifying cancellation of a deed for failure of consideration is where some independent ground of equitable jurisdiction, such as fraud, exists. *Douglass v. Douglass,* 199 Okl. 519, 188 P.2d 221 (1947). See also 13 Am.Jur.2d *Cancellation of Instruments* § 23 (1964); 23 Am.Jur.2d *Deeds* § 67 (1965); 12A C.J.S. *Cancellation of Instruments* § 28 (1980). As previously discussed in Section 11, supra, the record reveals no fraud or active wrongdoing on the part of Grantee. There is some evidence that the Grantee regretted entering into the contract, but this regret was expressed after execution and delivery of the deed. An unperformed promise to pay may justify cancellation of a deed but only if the promise was made with the intention of not paying. "Generally, if the transaction and deed were valid when the deed was executed, the deed is not invalidated by any subsequent act or omission of the Grantee, such as nonpayment of the price; and ordinarily, an unperformed promise to do something in the future is not fraud." 23 Am.Jur.2d *Deeds* § 163 (1965). The record not only fails to reveal any intention of the Grantee not to pay at the time the contract was entered, but the contrary, the initial payment on the note sug-

gests that the intent not to pay arose after the deed was executed.

## EVIDENCE

 Grantee's successors raised several issues as to the admissibility of Grantor's evidence, particularly as to the admissibility of alleged statements of the Grantee prior to his death regarding his intent to rescind the contract. These issues were not reached by the Court of Appeals nor need we reach them here. Since the evidence taken in its most favorable light is inadequate to support any theory justifying rescission of the deed, Grantee's successors were not prejudiced by the admission thereof.

■ Title 42, § 26 of the Oklahoma Statutes (1981) may impose a vendor's lien on property to the extent that the purchase price is unpaid and unsecured. The relevant language is:

"One who sells real property has a special or vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured, otherwise than by the personal obligation of the buyer, subject to the rights of purchasers and incumbrancers, in good faith, without notice." 42 Okla.Stat. (1981) § 26.

Although the lien is provided by statute, it is not dependent on the statute. Rather, it is an equitable charge on the land which comes into existence and attaches to the realty the moment the realty is conveyed while the purchase price is unpaid and unsecured. *Whelan v. Midland Mortgage Co.,* 591 P.2d 287 (Okl.1978). See also *Clark v. Ellison,* 180 Okl. 630, 71 P.2d 609 (1937); *Stuart v. Westerheide,* 144 Okl. 150, 289 P. 721 (1930); *Craggs v. Earls,* 8 Okl. 462, 58 P. 637 (1899).

It is undisputed that the total purchase price for the property in question has not been paid. The debt is evidenced by a promissory note executed by the Grantee. By imposing the vendor's lien, the original intent of the parties may be enforced.

Equity, once having attached in a proper proceeding, will offer complete relief on all questions properly raised by the evidence regardless of whether they were specifically *raised by the pleadings. Lewis v. Schafer,* 163 Okl. 94, 20 P.2d 1048 (1933). Equity follows the law. *Welch v. Montgomery,* 201 Okl. 289, 205 P.2d 288 (1949).

■ From an examination of the evidence, this transaction could be treated as one for foreclosure of vendor's lien, and once equity attaches for any purpose, it attaches to grant all relief. *Harrison v. Perry,* 456 P.2d 512 (Okl.1969); *Berland's Inc. of Tulsa v. Northside Village Shopping Center, Inc.,* 447 P.2d 768 (Okl.1968); *City of Moore v. Central Oklahoma Master Conservancy District,* 441 P.2d 452 (Okl.1968); *Finley v. Concho Construction Company,* 388 P.2d 863 (Okl.1963).

Case remanded to trial court to determine the rights of the parties, if any, under 42 O.S.1981, § 26, applicable law and statutes thereunder.

REVERSED AND REMANDED WITH INSTRUCTIONS.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, SIMMS, HARGRAVE and WILSON, JJ., concur.

OPALA, J., concurs in part; dissents in part.