760 F.2d 1074
 18 Fed. R. Evid. Serv. 752
 Marilyn Rose Betche WAGSTAFF, Plaintiff-Appellee, Cross-Appellant,
v.
PROTECTIVE APPAREL CORPORATION OF AMERICA, INC., a New York
corporation, CCS Communication Control, Inc., a New York
corporation, CCS Communication Control of Illinois, Inc., an
Illinois corporation, and Michael Ben-Baruch, an individual,
Defendant-Appellants, Cross-Appellees.
 Nos. 83-2431, 83-2477.
 United States Court of Appeals,
Tenth Circuit.
 May 3, 1985.
 
 C. Elaine Hammons of Hammons & Hammons, El Reno, Okl., for plaintiff-appellee, cross-appellant.
 Linda G. Scoggins (Stephen P. Friot with her on the briefs), of Spradling, Alpern, Friot & Gum, Oklahoma City, Okl., for defendants-appellants, cross-appellees.
 Before BARRETT and McKAY, Circuit Judges, and WINDER, District judge.*
 McKAY, Circuit Judge.
 
 
 1
 This case arises out of a business deal which resulted in the death of plaintiff's decedent and the frustration of an on-going business relationship between the plaintiff's decedent and the defendants.
 
 
 2
 The defendants are manufacturers and sellers of various items of security equipment. Plaintiff's decedent was the proprietor and operator of a small electronics business. In the fall of 1981, plaintiff's decedent became interested in electronic security equipment for use in his electronics business. At that time he purchased $20,000 worth of equipment from the defendants. Later he was contacted by the defendants with the prospect of becoming one of their distributors. He was told that to become a distributor he was required to purchase $50,000 worth of equipment but that the $20,000 worth of equipment that he had earlier purchased could be credited toward his distributor account. He was also told that someone else in his area was interested in the distributorship and that the first of the contenders to come up with the $50,000 would be named the distributor for that area. After deciding to become a distributor for the defendants, plaintiff's decedent executed a "distributorship agreement," paid the defendants $10,000, and promised to pay the additional $20,000 as consideration for the distributorship. Shortly afterward, while making a public demonstration of the defendants' protective clothing, plaintiff's decedent was stabbed to death due to a defect in defendants' equipment. Plaintiff filed a diversity action seeking recovery for the wrongful death of her husband as a result of the defect in defendants' equipment, and for fraud and rescission of the contract based on frustration of purpose.
 
 
 3
 The jury found for plaintiff on the wrongful death claim and that decision has not been appealed. The trial court sustained a directed verdict on the issue of fraud, holding that the plaintiff had failed to introduce sufficient evidence to support this claim, but submitted the issue of rescission to the jury. The jury returned a verdict for plaintiff on the issue of rescission. Both parties appeal. Plaintiff claims that the district court erred in directing a verdict on the fraud claim, and defendants claim that submission of the rescission claim to the jury was improper.
 
 I. Rescission
 
 4
 Defendants make two arguments why the rescission decision was incorrect. First they argue that, under Oklahoma law, frustration of purpose is not grounds for rescission of a contract. This argument is spurious. While 15 Okla.Stat. Sec. 233 (1966) does not specifically mention frustration of purpose as one of the statutory grounds for rescission, the Oklahoma Supreme Court has held:
 
 
 5
 Rescission or cancellation of a contract may be ordered where that which was undertaken to be performed in the future was so essential a part of the bargain that the failure of it must be considered as destroying or vitiating the entire consideration of the contract, or so indispensable a part of what the parties intended that the contract would not have been made with that condition omitted.
 
 
 6
 Wright v. Fenstermacher, 270 P.2d 625, 627 (Okla.1954) (quoting Davis v. Hastings, 261 P.2d 193 (Okla.1953) ). Thus frustration constitutes a failure of consideration and is therefore within the statutory grounds for rescission enumerated in 15 Okla.Stat. Sec. 233.
 
 
 7
 Defendants also contend that, even if frustration is a ground for rescission in Oklahoma, the trial court's finding that frustration occurred was clearly erroneous. In support of this contention defendants argue that the transaction was merely a sale of goods and was therefore totally completed prior to the death of plaintiff's decedent. The evidence presented at trial, however, persuasively demonstrated otherwise. The transaction itself was memorialized on a document describing it as a "distributorship agreement." In addition, the jury listened to tapes of telephone conversations in which the decedent was told that if he failed to obtain the needed $50,000 within a short period of time, there was a good chance that the distributorship would be given to another. In addition, numerous memoranda between the parties indicate that plaintiff's decedent was greatly concerned with his ability to market the defendants' goods and with the effectiveness of defendants' help in developing a profitable market for the distributorship. All this evidence belies defendants' assertion that the transaction involved was nothing but a sale of goods. Since the transaction was not a sale of goods but truly a distributorship agreement, the court's instruction to the jury regarding frustration and the jury's determination thereon are both supported by the law and the facts in this case. Therefore, the district court's decision with respect to rescission is affirmed.
 
 II. Fraud
 
 8
 Plaintiff's argument that the defendants were guilty of fraud relied principally on two alleged misrepresentations by the defendants. The first was the statement on an envelope in which the distributorship agreement materials were mailed to the plaintiff's decedent that the defendants were suppliers of security equipment to the U.S. Olympics. The second was defendants' representations that they had a good reputation and particularly that they were highly respected by police departments. Plaintiff asserted that both of these representations were false. The evidence showed that defendants were not suppliers of security equipment to the U.S. Olympics and that defendants were guilty of several violations of the law that would tend to blemish their reputation with law enforcement personnel. Defendants argue that the assertion that the defendants had a good reputation with law enforcement officials was merely a matter of opinion and therefore could not form the basis of a fraud claim and that plaintiffs failed to show that plaintiff's decedent relied upon the assertion that defendants were suppliers to the U.S. Olympics. It is doubtful that these arguments would be sufficient to support the district court's directed verdict even were these misrepresentations the only evidence of fraud that plaintiff produced. Plaintiff introduced other evidence of fraud, however, that makes it clear that a directed verdict was improper.
 
 
 9
 The evidence clearly established that plaintiff's decedent was interested in establishing a successful distributorship. The jury listened to tape-recorded telephone conversations between representatives of the defendants and the plaintiff's decedent in which the defendants assured the plaintiff's decedent that a viable distributorship could be operated in the Oklahoma City area and that the defendants would participate with plaintiff's decedent in the establishment of such a distributorship. One of defendants' own employees testified that there was no real expectation within defendants' organization that a distributorship would be successful and continue, and that one of defendants' top executives had stated on more than one occasion that none of the distributors could possibly be successful. Given this evidence, a jury could have concluded that defendants had represented to plaintiff's decedent that he was purchasing a distributorship from the defendants that had a genuine potential of success whereas, in fact, the defendants knew that the distributorship could not be successful and did not intend to put forth their best efforts to help establish it.
 
 
 10
 Fraud may be perpetrated by making a promise to perform a future act with the present intention not to perform. State ex rel Southwestern Bell Tel. Co. v. Brown, 519 P.2d 491 (Okla.1974). As we pointed out above, the plaintiff's decedent was extremely interested in establishing a successful distributorship. Therefore, it would not have been unreasonable for a jury to conclude that plaintiff's decedent relied upon defendants' representations that a successful distributorship could be established and that he was purchasing their help in its establishment, and that these misrepresentations were material.
 
 
 11
 Defendants assert that, even if there was fraud, plaintiff failed to prove damage resulting from that fraud. However, the evidence shows that plaintiff's decedent paid $50,000 for what he believed to be a successful distributorship opportunity when, in fact, the defendants intended to sell nothing more than the particular goods the plaintiff was purchasing. While the goods may have had some intrinsic value, a jury could infer that plaintiff's decedent would not have paid $50,000 for the goods themselves, even if this were their market value, had the defendants not represented that the package included the promise to help establish a successful distributorship. Therefore, defendants' claim that plaintiff failed to introduce sufficient evidence of damage resulting from defendants' misrepresentations to support a jury verdict is without merit. Plaintiffs did fail to prove by any substantial evidence the amount of actual damages caused by defendants' fraud. However, under Oklahoma law, plaintiffs can recover punitive damages upon the showing of nominal damages from defendants' fraud. Moyer v. Cordell, 228 P.2d 645 (Okla.1951). Plaintiff clearly introduced sufficient evidence from which a jury could have found at least nominal damages.
 
 
 12
 Defendants' claim that a judgment of rescission and a judgment finding fraud cannot both result from the same contractual transaction. However, we do not read Oklahoma law as precluding both rescission of a contract and compensation for injuries inflicted or services rendered during the period for which the contract was thought to be in existence by the parties. Frickenschmidt v. Garner, 51 P.2d 537 (Okla.1935). Therefore, while plaintiff will not be allowed to recover compensation for actual damages resulting from the fraud because she has failed to prove those damages, plaintiff is entitled to a retrial on the issue of punitive damages, which are not precluded under Oklahoma law by the rescission judgment. Therefore, the district court's judgment with respect to the fraud claim must be reversed and the case remanded for a new trial on the issue of plaintiff's entitlement to punitive damages for the fraud of the defendants.
 
 
 13
 In view of our decision to reverse the district court's determination with respect to the fraud issue, we must examine plaintiff's claim that the district court improperly refused to admit into evidence certain reprints of newspaper articles that were delivered by defendants to plaintiff's decedent. The reprints make statements about defendants' financial situation that are claimed to be inflated representations relevant to the fraud inquiry. In the first trial the district court ruled that these newspaper reprints were inadmissible as hearsay. This decision was incorrect. Fed.R.Evid. 801(d)(2) provides that a statement is not hearsay if it is offered against a party and is "a statement of which he has manifested his adoption or belief in its truth." By reprinting the newspaper articles and distributing them to persons with whom defendants were doing business, defendants unequivocally manifested their adoption of the inflated statements made in the newspaper articles. Therefore, it was an abuse of discretion for the district court to refuse to admit this very relevant evidence of fraud.
 
 
 14
 Defendants argue that even if the district court was wrong in refusing to admit the reprints on the basis of hearsay, the evidence should nonetheless have been excluded because defendants did not give the reprints to plaintiff's decedent until after he had signed the contract in question. This contention must fail for two reasons. First, it is not shown clearly in the record when plaintiff's decedent received these reprints from defendants. Second, even if plaintiff's decedent received these reprints after signing the contract, this evidence would still be relevant to the issue of the fraudulent character of the transaction. On remand, therefore, plaintiff must be allowed to introduce the reprints and to explain the circumstances under which the reprints were delivered to plaintiff's decedent.
 
 
 15
 With respect to the district court's judgment of rescission, the case is affirmed. The district court's judgment on the fraud claim is reversed and the case is remanded for a new trial on defendants' liability for punitive damages arising from the fraud claim.
 
 
 
 *
 Honorable David K. Winder, United States District Judge for the District of Utah, sitting by designation